Harold Smith and Faye L. Smith v. Commissioner.
Smith v. Commissioner
Docket No. 3927-65.
United States Tax Court
T.C. Memo 1967-229; 1967 Tax Ct. Memo LEXIS 32; 26 T.C.M. (CCH) 1160; T.C.M. (RIA) 67229; November 16, 1967
*32 Petitioner, a farmer, bought cattle, fed them to increase their weight, and then sold them. To retain the interest and services of his children in his business he gave each child a calf, provided feed for it, and made the proceeds of sale available to purchase additional animals for the child in later years. The child could thus acquire 10 or more animals. Petitioner supplied feed for up to 10 and charged the child for feeding more. The child was to work on the farm except for time in school. The cattle acquired by the child were not separately identified but were commingled with petitioner's cattle. Petitioner's daughter, Sally, under this arrangement, had 12 cattle on feed prior to 1962. Petitioner acquired 18 head for her account in 1962 and 14 head in 1963. Sally did not pay for these at the time of acquisition, but paid for them out of the proceeds of their sale. Sally was then in college but worked at the farm on weekends and vacations. Held: (1) The 18 head in 1962 and 14 head in 1963 were property of Sally and the gains upon their sale are not taxable to petitioners. (2) The costs of feeding Sally's cattle were reasonable compensation for her services and are deductible *33 by petitioners. (3) Petitioners have not proved that they are entitled to exemptions claimed for Sally. H. Richard Smith, for the petitioners. Sheldon S. Rosenfeld, for the respondent. BRUCE Memorandum Findings of Fact and Opinion BRUCE, Judge: Respondent determined deficiencies in income tax for the calendar years 1962 and 1963 in the amounts of $459.51 and $994.57 respectively. Petitioners claim an overpayment of $635.31 for 1962. The issues for decision are (1) whether petitioners were owners of certain cattle sold in these years; (2) whether they are *34 entitled to deductions claimed for related expenses; and (3) whether petitioners are entitled to exemptions claimed in both years for their daughter Sally. Findings of Fact The stipulation of facts and the exhibits attached thereto are incorporated by this reference. Harold Smith and Faye L. Smith are husband and wife residing at R.R. #2, Emerson, Iowa. They maintained their books and records and filed their Federal income tax returns on the cash receipts and disbursements basis. They filed joint returns for the calendar years 1962 and 1963 with the district director of internal revenue at Des Moines, Iowa. Harold Smith, sometimes referred to as the petitioner, has been engaged in farming since 1929. He has carried on a cattle feeding operation, purchasing cattle, feeding them for several months to increase their weight, and selling them. He raised a large part of the grain for such feeding and bought additional grain. On the income tax return for 1962 he reported gain on the sale of 664 fat cattle. On the return for 1963 he reported gain from sale of 1,155 fat cattle. Petitioner's practice in feeding cattle was to buy calves in the fall and feed them for about one year, *35 or to buy yearlings and feed them for some five to eight months. Sometimes he bought two-year-old steers and fed them for about four months prior to sale. In 1962 petitioner was farming 210 acres which he owned and 80 additional acres which he rented. Petitioner owned two other farms. One of his adult sons was operating one of these on 335 acres adjoining. A second son was farming on another farm owned by petitioner. Petitioner fed some cattle in partnership with his sons and some on his own account. In 1963 petitioner farmed the 290 acres plus the 335 acres one of his sons had used in the preceding year. Petitioner had five children. He adopted a plan to interest them in his business and to retain their services on the farm. When his first son reached the age of 10, petitioner gave him one calf as his property. Petitioner supplied the feed to fatten the animal and after it was sold the proceeds were made available to the son for acquiring additional calves the following year. This practice continued in succeeding years until the son could acquire 10 or more animals. Petitioner would supply feed for up to 10 animals. If the son acquired more than 10 he was charged for the additional *36 feed. In return for this the son was expected to work on the farm except for time spent in school. This plan was followed with petitioners' later children. Sally J. Smith, sometimes referred to herein as Sally, is a daughter of the petitioners. Prior to 1962 she worked at home except for time in school or college. In 1962 she was in college until May and returned to college in the fall. She spent two months of the summer in training for work as a home economist. In 1963 she graduated from college in May or June, then took a trip to Europe for nearly 10 weeks given as a graduation present by petitioners, worked at home until October 1 and thereafter was employed away from home as a County Extension Home Economist. When Sally was 10 years old she was given one calf by petitioner under the same arrangement as had been made with her older brothers. In succeeding years she was able to increase the number of calves purchased by her from petitioner and fed for her account by petitioner until in 1959, 1960 and 1961 she had 12 calves on feed. In these years she paid her father for her calves at the time they were first acquired, and she paid for feed for those in excess of 10. She reported *37 on her income tax returns the receipts obtained from the sale of these cattle. The cattle she thus acquired were not identified separately from the rest of the herd but were commingled with the other cattle owned by her father. In 1962 petitioner decided to buy yearlings instead of calves and fed them over a period of about five months and in 1963 he bought two-year-old cattle and fed them for a shorter period. The 1962 operation was successful but the 1963 venture showed very little profit. In 1962 petitioner acquired 18 head for Sally's account and 14 head in 1963. Sally was not present at the times of the purchases. Sally did not pay petitioner for these at the time of acquisition but paid for them after the animals were sold and proceeds were received. Sally was in college at the times of these purchases and did not have the money to pay in advance of sale. She gave no note for the purchase price and paid no interest thereon. Bowles Livestock Commission Co., herein referred to as Bowles, is a firm engaged in the business of selling feeder cattle for and on behalf of farmers. On September 4, 1962, Bowles sold in the names of Harold and Sally Smith 30 head of cattle for a net *38 sale price of $8,006.32. Bowles drew a check in this amount payable to Harold and Sally Smith. The endorsements of both payees on the reverse of this check were executed by Harold Smith. Sally J. Smith had a checking account with Houghton State Bank at Red Oak, Iowa. On September 5, 1962, her balance was $113.38. On September 6, 1962 she deposited the amount of $4,860 in such account and drew a check for $2,664 on such account payable to Harold Smith, who deposited it, with other checks, in his account with the same bank. On December 24, 1963, Bowles sold in the names of Harold and Sally Smith 44 head of cattle for the net amount of $10,489.97. Bowles drew a check dated December 24, 1963, in this amount payable to Harold and Sally Smith. Prior to December 26, 1963, Sally J. Smith's checking account had a balance of $45.66. On that date she deposited the amount of $3,337.74 in her checking account and drew a check for $2,554.44 on such account payable to Harold Smith, who deposited it on the same date in his account with the Houghton State Bank. Sally's check carried the notation "for 14 head." Sally filed income tax returns for 1962 and 1963 reporting gain of $2,196 on the sale *39 of 18 head of cattle in 1962 and of $783.30 on the sale of 14 head in 1963. She reported wages or salaries amounting to $770 in 1962 and $1,419.58 in 1963. Sally was the owner of 18 head of the cattle sold by petitioner and Sally in 1962, and of 14 head of those sold by petitioner and Sally in 1963. The costs to the petitioners of feeding Sally's cattle in 1962 and 1963 were reasonable compensation for her services and are deductible by petitioners as ordinary and necessary business expenses. Petitioners have not proved that more than half of Sally's support in 1962 or 1963 was received from them. Opinion The petitioners reported on their tax returns for 1962 and 1963 gains from the sale of 664 cattle and 1,155 cattle respectively. Their daughter Sally filed income tax returns for those years reporting gains from the sale of 18 and 14 cattle respectively. Respondent determined that these cattle were the property of the petitioners and the gains from such sales were taxable to the petitioners. Respondent says that petitioner Harold Smith made all decisions with respect to the type of cattle purchased, the price to be paid, their care and feeding, the date of sale, the market *40 for selling and the price to be accepted, that Sally did not pay for the cattle alleged to be hers or give a note for the purchase price, or pay interest on a loan therefor, and that such cattle were not identified or separated from petitioner's herd but were commingled with that herd. Petitioner testified to the arrangement he made with each of his children to interest them in his business and to keep them working on the farm. Starting with one calf given by petitioner, the child was encouraged to invest the proceeds resulting from its sale in two animals in the next year, ultimately increasing the number in later years to ten or more. The child was to work on the farm and petitioner would in return provide feed for up to ten animals for the child's account. Sally testified corroborating this understanding. We see no reason to question the arrangement. Apparently it accomplished petitioner's purpose, as his older sons were working on his other farms in the same kind of business in partnership with him in the taxable years. Respondent admits that in all previous years the children, including Sally, paid for their cattle at the time of purchase. Sally did not pay in advance for the *41 first time in 1962 or 1963, and did not give a note or other evidence of debt, or pay interest on the advanced funds. Respondent points out that no specific cattle were identified or identifiable as Sally's. As petitioner explains, Sally had an interest measured by the average cattle in the herd, not the 18 or 14 best or worst, nor by identified animals. In Campbell v. Prothro, 209 F. 2d 331 (C.A. 5, 1954), the taxpayer made a gift to the YMCA of 100 head of the average of the calves of the 1948 crop on a specified ranch. The entire group of calves, numbering 792, were sold by a contract in which the donor and the YMCA were sellers and a proportionate part of the proceeds was paid to the YMCA. Although the terms of the gift provided for selection of 100 animals from the group, no selection was made. The Government contended that the donor realized income from the sale of the calves, saying that the gift was of the proceeds rather than of the calves. The court concluded that the gift was of the calves and that these were not income in the taxpayer's hands, hence he did not realize income from the gift. This view has been accepted by the respondent, Rev. Rul. 55-138 *42 (C.B. 1955-1, 223), and was approved by this Court in Stuart A. Rogers, 38 T.C. 785, 788 (1962). The court in Prothro did not require the selection of the calves to evidence the completion of the gift. Insofar as the present case is concerned we consider it unnecessary that Sally's cattle be identified and segregated. It is enough that she had a proportionate interest in the entire herd measured by 18 head in 1962 and 14 head in 1963. See also Estate of W. G. Farrier, 15 T.C. 277 (1950, and Elsie SoRelle, 22 T.C. 459 (1954), Acq. C.B. 1955-1, 6. It is immaterial that Sally did not pay petitioner for these cattle at the time he acquired them. Respondent contends that the receipts from the sale of these cattle had their source in capital and services furnished by petitioner and therefore must be included in the petitioners' gross income. Respondent says that, while petitioner alleges that he fed these cattle as compensation to Sally for services performed on the farm, the facts show that Sally was not present on the farm for sufficient periods of time to furnish the services to support such compensation. Respondent points out that Sally was *43 a full-time student at Iowa State University at Ames, Iowa, 150 miles from the farm, from January to May 1962, and September 1962 to May 1963. She worked on a job away from the farm as a County Extension trainee in June, July, and August 1962. She had a tour of Europe of nearly 10 weeks in the summer of 1963 and was employed full-time away from home from October 1, 1963. Thus she had only some two weeks in 1962 and six weeks in 1963 when she could have been at home and working there. Respondent maintains that Sally contributed no capital and no services to the raising of the cattle while petitioner contributed the capital and provided the services. According to the testimony of petitioner and Sally, she worked on the farm at all times prior to 1962, when not in school. She helped in moving cattle from one location to another, cooking meals, transporting meals to men in the fields, driving a tractor and driving a car on errands. She refused employment at other places, such as resorts, in order to perform this work. In 1962 she had an opportunity to take training for work as a home economist, her intended profession, for two months, and petitioner agreed to that. In June 1963 she graduated *44 from college and was employed in her profession away from home after October 1. During the summer she took the tour of Europe given her as a graduation present. During both of these years she worked on the farm on vacations and on weekends when she was at home. While the testimony does not show on how many weekends she came home during the college months or precisely how many vacation days were spent on the farm, her services, performed under the long-standing arrangement previously described, were satisfactory to the petitioner. He considered that the amount and value of her services over the several years in which the arrangement was in effect were sufficient to warrant the compensation which he paid in the form of feeding her cattle in such years. While respondent contends that the transaction was in effect a device for transferring income by an anticipatory arrangement, we are satisfied that it was pursuant to a plan carried out in good faith to retain, not only the services, but the interest of petitioners' children in the business of farming generally and of their farm in particular, and that Sally's services were of a value to petitioner sufficient to cover the costs of *45 feeding her cattle in the years involved. In arriving at this conclusion we have considered the respective contentions of the parties as to the costs of feeding these cattle. Furthermore, since we have found that the cattle were the property of Sally and that the costs of feeding them was reasonable compensation for her services to petitioner, we hold that such costs are deductible by petitioners in 1962 and 1963 as ordinary and necessary business expenses. Respondent disallowed deductions of $600 claimed on the petitioners' returns as exemptions for Sally for the reason that petitioners had not established their rights to the deduction. Petitioners alleged error and stated that their daughter Sally was a full-time student during the taxable years and more than one-half of her support was furnished by them. Respondent alleges that petitioners have failed to prove that they are entitled to this exemption. Although the petitioners have not argued the point on brief, it is clear from the evidence that petitioners' daughter was a full-time student at Iowa State University, Ames, Iowa, during five months of each of the years 1962 and 1963, thus meeting the requirements of section 151(e) of the Internal Revenue Code *46 of 1954. However, petitioners have failed to show that they provided over half of Sally's support, as required by section 152. There is no evidence to show the cost of her support or how much was furnished by petitioners. Since Sally was unable to pay in advance for her cattle, it appears likely that she was using her earnings from prior years in supporting herself and paying for her college expenses. The petitioners have not met the burden of proving that they are entitled to the exemptions claimed. Decision will be entered under Rule 50.