Walter R. Carrington and Ada Raye Carrington v. Commissioner.
Carrington v. Commissioner
Docket No. 6390-69.
United States Tax Court
T.C. Memo 1971-222; 1971 Tax Ct. Memo LEXIS 112; 30 T.C.M. (CCH) 950; T.C.M. (RIA) 71222; August 31, 1971, filed. *112 Petitioners transferred 51 percent of the stock in their wholly owned corporation to a church. The corporation thereafter redeemed the church's stock in exchange for a residence. Held, since petitioners made a completed gift of the stock to the church prior to the realization of any gain, the value of the residence is not taxable to them as a distribution essentially equivalent to a dividend within the meaning of sec. 302, I.R.C. 1954. E. Richard *113 Criss, Jr., 900 Brown Bldg, Austin, Tex., for the petitioners. W. Read Smith, for the respondent. FEATHERSTON
Opinion FEATHERSTON, Judge: Respondent determined a deficiency in petitioners' Federal income tax for 1966 in the amount of $5,573.71. The sole issue to be decided is whether petitioners realized dividend income as the result of a series of transactions whereby they contributed 51 percent of the stock of a corporation to a church and the corporation thereafter distributed a residence to the church in redemption of such stock. Walter R. Carrington (hereinafter referred to as petitioner) and Ada Raye Carrington, husband and wife, were residents of Austin, Texas, at the time they filed their petition. They filed a joint Federal income tax return for 1966 with the district director of internal revenue, Austin, Texas. The facts, all stipulated, show that petitioner was a member of the vestry, the governing body, of St. Matthew's Episcopal Church, Austin, Texas (hereinafter St. Matthew's). At a vestry meeting on October 17, 1966, petitioner was appointed to a committee created "to investigate the possibilities of purchasing a new rectory, adding to the present *114 rectory, or trading the rectory for another." On October 30, 1966, the committee recommended that St. Matthew's acquire for use as a rectory a residence located on Highland Hills Drive in Austin. The residence selected by the committee belonged to Cardinal-Day Enterprises, a partnership composed of two corporations, Cardinal Construction Company (hereinafter Cardinal) and Day Realty Company, both of which were wholly owned by petitioner. At the vestry meeting on October 30, 1966, petitioner announced that "he would formulate a plan to allow the Church to acquire the property [worth $41,559.80] at a net cost of not more than $32,000." Pursuant to the plan developed by petitioner, on December 19, 1966, he transferred and delivered to St. Matthew's 51 of the 100 outstanding shares of Cardinal's stock. Thereafter, on December 23, 1966, petitioner caused Cardinal-Day Enterprises to convey the residence to Cardinal, subject to an outstanding mortgage of $30,600. On December 27, 1966, Cardinal conveyed the residence to St. Matthew's, and St. Matthew's transferred its Cardinal stock, worth $10,959.80, to Cardinal and agreed to pay 951 the outstanding mortgage. [1] Cardinal never reissued *115 the 51 shares of stock received in the transaction; in fact, Cardinal was liquidated about 6 months later, on June 30, 1967. Respondent determined that the "redemption by Cardinal Construction Company of 51 shares of its stock which * * * [petitioner] had contributed to St. Matthews Episcopal Church was equivalent to a dividend to * * * [petitioner] of $10,959.80 in 1966." See secs. 301, 302, and 316. [2] Respondent urges that "the contribution of the stock by the petitioners in their solely owned corporation * * * followed shortly thereafter by a redemption of the stock by Cardinal, were all steps in a preplanned and prearranged transaction, the net effect of which, when considered together, was a redemption from petitioners [who owned all the Cardinal stock which was not redeemed] resulting in a dividend to them." In response, petitioners argue that they made a completed gift of the stock to St. Matthew's *116 and that Cardinal thereafter redeemed the stock in exchange for the residence; consequently, since the gift of the stock was a completed one, petitioners contend, they realized no dividend income as a result of the redemption. The rule is now settled that the redemption of stock owned by a sole shareholder of a corporation is, as a matter of law, equivalent to a dividend to the extent of the corporation's earnings and profits. United States v. Davis, 397 U.S. 301 (1970). If, therefore, respondent is correct in his contention that petitioners must be treated as owners of the Cardinal stock at the time the redemption was made, his determination must be sustained. If the transfer to St. Matthew's however, was effective to divest petitioner of ownership of the stock prior to the redemption, respondent's determination is erroneous. In the final analysis, therefore, the issue is whether, in substance, petitioner was the owner of the stock at the time the residence *117 was distributed to St. Matthew's. In weighing the merits of the respective contentions, we begin with the fact that petitioners cast the transaction into this particular mold in an effort to obtain the maximum tax benefit. We think it also clear that petitioners expected St. Matthew's to cause Cardinal to convey the residence to it shortly after the stock transfer was completed. Notwithstanding these facts, we do not think petitioners realized taxable income from Cardinal's conveyance of the residence to the church. The crucial stipulated fact is that: On December 19, 1966, petitioner, Walter R. Carrington, made a transfer and delivered fifty-one (51) of his one hundered (100) shares of stock in Cardinal Construction Company to St. Matthews Episcopal Church, a charitable organization, and he retained ownership of the remaining forty-nine (49) shares. Significantly, it is further stipulated that the residence was not transferred to Cardinal until December 23, 1966, and was not conveyed to the church until December 27, 1966. We understand from these stipulated facts that petitioner made a completed gift of a majority of his Cardinal stock to St. Matthew's. At the time this *118 gift was made, Cardinal was under no obligation to redeem its stock in exchange for the residence, and there was no existing agreement between St. Matthew's and Cardinal requiring this to be done. Indeed, Cardinal did not acquire the residence until after the stock had been contributed to St. Matthew's. After the completion of the gift of the stock, petitioner could not have required such a redemption. Not only had he relinquished all control over the stock; he had also surrendered his voting control over the corporation. The mere expectation that the redemption would be made at a later time or that it had been planned is not enough, without more, to cause the gain to be attributed to petitioners. Since St. Matthew's rather than petitioner owned the 51 shares of donated stock at the time they were redeemed, petitioner did not realize taxable income as a result of the redemption. This conclusion is consistent with the holding of a long series of cases presenting the question whether the charitable contribution of appreciated property followed by its sale or other disposition (such as the redemption of donated stock) results in the realization of income by the donor. 952 The rule *119 was stated in Stuart A. Rogers [Dec. 25,638], 38 T.C. 785 (1962), where the taxpayer made a gift to a charity of a $10,000 equity in a stand of timber and within a few weeks sold the entire stand on behalf of the charity and himself, specifying that $10,000 was payable directly to the charity. This Court held that the taxpayer did not realize income because the gift preceded the sale, stating (at 789): The test seems to be simple: Did the donor part with title to the property producing the income? If he did, then the sale by the donee does not result in taxation to the donor. But if the donor keeps title to the property and gives away only current income, such income is taxed to him as if actually received to prevent planned income splitting. * * * [The taxpayer] made a valid gift of an equity in certain timber. No timber lease existed * * * [at the date of the gift], and we view the letter bearing that date as giving an equity in the timber stand. This gift, when delivered and accepted, gave the donee the indefeasible right to the first $10,000 to be realized from the *120 timber stand. * * * [The taxpayer] parted with an equity of $10,000 in his timber, and the subsequent sale thereof does not cause realization of income by him. See also Campbell v. Prothro, 209 F. 2d 331 (C.A. 5, 1954); White v. Brodrick, 104 F. Supp. 213 (D. Kan. 1952), appeal dismissed 198 F. 2d 751 (C.A. 10, 1952); cf. South Lake Farms, Inc., 36 T.C. 1027 (1961), affd. 324 F. 2d 837 (C.A. 9, 1963); Elsie SoRelle, 22 T.C. 459, 475-479 (1954); and Estate of W. G. Farrier, 15 T.C. 277 (1950). [3]
*121 In Humacid Co., 42 T.C. 894 (1964), the controlling shareholder of a corporation donated to three charitable foundations certain promissory notes issued by the corporation, and in the same month the corporation redeemed the notes. This Court rejected the Commissioner's contention that the shareholder realized income as a result of the donation and redemption of the notes, stating (at 913): A gift of appreciated property does not result in income to the donor so long as he gives the property away absolutely and parts with title thereto before the property gives rise to income by way of a sale. * * * On the basis of the facts before us, it is our opinion that * * * [the taxpayer] did this. Therefore, he should not be regarded as having received income upon * * * [the corporation's] redemption of the notes from the three charitable or educational organizations. In Winton v. Kelm, 122 F. Supp. 649 (D. Minn. 1954), the facts closely parallel the ones in the instant case. There the taxpayer made gifts of stock to charitable foundations, and three days later the *122 corporation adopted a plan of complete liquidation. Rejecting an effort to tax the liquidation gain to the taxpayer, the court, after reviewing numerous decided cases, stated (at 653): Consideration of all the above cases indicates that the basic factor in all is whether or not there had been a severance of the gain in value of the stock prior to the transfer. If such has occurred it is taxable to the transferor although he thereafter purports to avoid it by assignment of the stock. If it occurs after transfer it is an incident of stock ownership and taxed to the transferee. See also Jacobs v. United States, 280 F. Supp. 437 (S.D. Ohio 1966), affd., 390 F. 2d 877 (C.A. 6, 1968); Sheppard v. United States, 361 F. 2d 972 (Ct. Cl. 1966); cf. Theodore D. Stern, 15 T.C. 521, 525-526 (1950); Apt v. Birmingham, 89 F. Supp. 361 (N.D. Iowa 1950). In each of these cases, the application of the so-called step transactions doctrine in the manner advocated by respondent would have created taxable income for the donor. Yet in each *123 case the courts gave effect to the completed transfers of the property which produced the income. Quite obviously the donees were expected promptly to sell or otherwise dispose of the subjects of the gifts - in Campbell v. Prothro, supra (100 calves to be selected from a herd); Stuart A. Rogers, supra (a $10,000 equity in standing timber); White v. Brodrick, supra953 (harvested grain); and Sheppard v. United States, supra (a fractional interest in a racehorse) - since in no other way could the donee-charity have benefited from the contribution. Similarly, the parties had planned or prearranged the note redemptions in Humacid Co., supra, and the corporate liquidations in Winton v. Kelm, supra, and Jacobs v. United States, supra.Yet the courts did not disregard the sequence of the various transactions in order to find that, in substance, the sale, redemption, or liquidation preceded the charitable contribution. On the contrary, the courts gave effect to the transfers and concluded that, at the time they occurred, no income had been realized. In reaching this conclusion the step transactions *124 doctrine was expressly or implicitly rejected in Sheppard v. United States, supraHumacid Co., supra; and Apt v. Birmingham, supra. Respondent has suggested no reason why recasting the distribution of the residence as a dividend to petitioner would reflect the substance of the transaction any more accurately than would giving effect to the form which petitioner adopted. The facts are that Cardinal owned a residence and petitioner, sole stockholder of Cardinal, wanted St. Matthew's to acquire the residence if St. Matthew's would assume the mortgage. There were several ways in which the transaction could have been handled, e. g., a donation by Cardinal; a sale by Cardinal at a full price or a bargain price; complete or partial liquidation of Cardinal and distribution of the residence to petitioner, followed by its transfer to the church; or a variety of other possibilities. Each would have produced its distinctive tax consequences. Petitioner was entitled to choose the method most favorable to him tax-wise. Gregory v. Helvering, 293 U.S. 465, 469 (1935); Granite Trust Company v. United States, 238 F. 2d 670, 675 *125 (C.A. 1, 1956). And the stipulated fact is that, prior to the distribution to Cardinal, petitioner "made a transfer and delivered" the stock to St. Matthew's. The transfer was not a superficial formality. Nor was its effect limited to a reduction in his tax liability. He parted with ownership of the stock. No gain on a redemption had been realized at that point. St. Matthew's became owner of the stock and it was entitled to, and did, acquire the residence directly from Cardinal. As a result of such acquisition, petitioner realized neither an actual nor a constructive dividend. To reflect other adjustments, Decision will be entered for petitioners. Footnotes
1. The residence was actually conveyed to the Protestant Episcopal Church Council of the Diocese of Texas, which holds title to all real property pertaining to Episcopal churches located in Texas. The Council thereafter held the property for the use of St. Matthew's.↩
2. All section references are to the Internal Revenue Code of 1954, as in effect during the tax year in issue.↩
3. The reasoning underlying the cases in this line dealing with farm crops was recently explained in Tatum v. Commissioner, 400 F. 2d 242, 246 (C.A. 5, 1968), affirming 46 T.C. 736 (1966), as follows (at 246-247): An operating farmer who donates crops to a third party prior to a taxable event, and prior to the point at which he must recognize income, is not required to include the value of the crops in gross income. * * * The farmer has done nothing more than assign to another a property asset which has appreciated in value. There has been no taxable event. Neither the harvesting of the crop nor the donative transfer is a taxable event. * * *↩