**530**

The **CHARLESTON NATIONAL BANK**, **Charles B. Stacy, Walter C. Price, Jr., and D. E. Matthews,** all as Executors of Thomas Clifton Matthews, deceased, Plaintiffs,

v.

**UNITED STATES of America,** Defendant.

No. CA–70–42–CH.

United States District Court, S. D. West Virginia, Charleston Division.

Feb. 25, 1971.

William C. Payne, Spilman, Thomas, Battle & Klostermeyer, Charleston, W. Va., for plaintiffs.

Johnnie M. Walters, H. E. Marmoll, Dept. of Justice, Washington, D. C. and W. Warren Upton, U. S. Atty., Charleston, W. Va., for defendant.

## MEMORANDUM OPINION

FIELD, Chief Judge.

Thomas Clifton Matthews was a stockholder in Conlon Baking Company, a West Virginia corporation, which was engaged in the business of producing bakery products in a plant at Charleston, West Virginia. On December 18, 1962, Conlon and Storck Baking Company entered into an agreement which gave Storck the option to purchase certain assets of Conlon including the land and operating assets but not cash, U. S. Treasury bills and bonds and other miscellaneous assets, and under date of December 22, 1962, Storck exercised the option. On January 3, 1963, a special meeting of the stockholders of Conlon was held which meeting was attended by Matthews. At the time of the meeting there were 3,000 shares of capital stock of Conlon outstanding, and Matthews owned 1,115 or 37% of these shares and served as vice-president of the corporation. At this meeting the stockholders ratified the agreement with Storck and also adopted a plan of complete liquidation which was designed to conform to the provisions of Section 337 of the Internal Revenue Code of 1954. On January 11, 1963, Conlon completed the sale of assets to Storck, and on January 12, 1963, Storck assumed the operation of the bakery business. Since Storck wanted to use Conlon's name, effective January 13, 1963, the corporate name of Conlon was changed to Almath Corporation, without altering either the capital structure or the number of authorized or outstanding shares of stock.

On January 30, 1963, Matthews made a gift of 60 shares of the capital stock of Almath to Union Mission Settlement, Inc., a tax-exempt charitable organization. Thereafter, Almath made four liquidating dividends to its stockholders in May, June and September of 1963. Al-

math's total distribution to Union Mission on the 60 shares received by it from Matthews was $20,153.18. The final two dividends were declared by Almath's Board of Directors on September 5, 1963, and on the same date the stockholders of Almath held a special meeting and unanimously adopted a resolution for dissolution of the corporation. Pursuant to this resolution the Secretary of State of West Virginia issued his certificate of dissolution of Almath under date of September 19, 1963.

On his 1963 tax return, Matthews took a charitable deduction in the amount of $20,153.18 which represented the value which he assigned to the Almath stock which he had given to Union Mission in January of 1963. The amount of this deduction represents the total liquidating distribution made by Almath to Union Mission and attributable to the 60 shares of stock received by it from Matthews.

Matthews did not include as income on his return any part of the liquidating dividends paid to Union Mission upon the stock which he had given to it. Upon an audit of his return, the Commissioner determined that Matthews had made an anticipatory assignment of income and that, accordingly, his gain on the 60 shares of donated stock should have been reported on his 1963 tax return. Based upon this determination, the Commissioner included an additional $9,734.21 in capital gain in Matthews' 1963 taxable income, and timely assessed taxes and interest thereon in the aggregate amount of $5,482.64, which deficiency assessment was paid in full by Matthews on June 10, 1966. Matthews died on March 26, 1967, and the plaintiffs herein, as executors of his estate, filed a timely refund claim which was disallowed on September 25, 1969. Thereafter, this action to recover the amount paid on the deficiency assessment was instituted. The standing of the parties, as well as jurisdiction and venue, are conceded by the Government.

Upon the foregoing facts, the single issue presented for disposition in this action is whether corporate liquidating distributions attributable to stock which is donated to a tax-exempt corporation after the plan of complete liquidation is adopted, but before the liquidating distributions are made, are includable in the donor's income.

It appears that a similar issue was considered by the Court and resolved in favor of the taxpayer in the case of Jacobs v. United States, 280 F.Supp. 437, (S.D.Ohio, 1966). In that case the taxpayer was a shareholder in Triangle Paper Bag Manufacturing Company, a closely held Kentucky corporation. In 1959 Triangle sold its assets and was liquidated pursuant to Section 337 of the Internal Revenue Code of 1954. Its shareholders adopted the plan of liquidation on March 3rd of that year, and in that month the sale of assets was approved by the shareholders and the contract of sale was made. On April 1st the company filed its notice of intent to liquidate with the Internal Revenue Service, and on April 29th it filed its statement of intent to dissolve with the Secretary of State of Kentucky. On May 15, 1959, the Jacobs Family Foundation was incorporated as a charitable non-profit corporation, and during the period from May 28th to June 17th the transfer of 90 shares of Triangle common stock from the taxpayer to the Foundation was effected. In September 1959, liquidating dividends on Triangle common stock were declared and such liquidating dividends in the aggregate amount of $100,169.58 were paid to the Foundation in that year. This amount was claimed by the taxpayer on his 1959 tax return as a deduction on the basis of the Foundation's status as a certified exempt charitable organization under the Internal Revenue Code. As in the present case, the taxpayer failed to include in his return any capital gain on the stock donated to the Foundation, and upon audit a deficiency was assessed. The Court framed the issue as follows:

"May a taxpayer exclude from his income corporate liquidation dividends where he donates corporate stock to a

charity before actual payment of the proceeds is made, but after the corporation has sold its assets and after the shareholders have fully adopted a plan of complete corporate liquidation?" In *Jacobs*, the Government argued that the donation of stock to the Foundation constituted an assignment of the taxpayer's right to receive income and therefore was taxable to him, which is the same contention advanced in the present case. In rejecting this contention in that case, however, the Court stated:

"In spite of the arguments concerning the unlikelihood of a repudiation of the dissolution proceedings prior to their finality, the fact remains that such abandonment was entirely possible. It has never been held that a distinction be made in this regard between closely held corporate entities and those with broadly distributed shares, and no such distinction will be here made."

As heretofore stated, the District Court concluded that the transfer of shares to the Foundation was not an assignment of the right to liquidation dividends by the taxpayer, and, accordingly, entered judgment in his favor. Upon appeal, this judgment of the District Court was affirmed. 390 F.2d 877 (C. A. 6, 1968).

In support of its position that the donation of the stock by Matthews constituted an anticipatory assignment of income, the Government relies upon the landmark decision of Helvering v. Horst, 311 U.S. 112, 61 S.Ct. 144, 85 L.Ed. 75 (1940). The *Horst* case was not mentioned in the *Jacobs* opinion, but in Rushing v. Commissioner of Internal Revenue, 52 T.C. 888 (1969), the Tax Court of the United States gave specific consideration to the *Horst* decision, but rejected its application and elected to follow the *Jacobs* case and held in favor of the taxpayer. See also Stern v. Commissioner of Internal Revenue, 15 T.C. 521 (1950).

The bona fides of the transaction in the present case are in my opinion

stronger than those considered by the Courts in the *Jacobs* and *Rushing* cases, and in the light of these authorities it is my conclusion that Matthews made a gift of the 60 shares of Almath stock to a qualified exempt charitable organization and that he did not make an anticipatory assignment of a right to liquidation dividends. Accordingly, judgment should be entered in favor of the plaintiffs, and counsel may prepare an appropriate order incorporating this memorandum opinion by reference therein.