Charles R. SIMMONS, Jr., and The Citizens & Southern Bank of Thomas County, a corporation, as Co-Executors of the Estate of Julia J. Davenport, Deceased, Plaintiffs,

v.

UNITED STATES of America, Defendant.

Civ. A. No. 933.

United States District Court, M. D. Georgia, Thomasville Division.

Feb. 3, 1972.

---

**948**

Alexander, Vann & Lilly, Thomasville, Ga., for plaintiffs.

William J. Schloth, U. S. Atty., Macon, Ga., and Jay R. Weill, Dept. of Justice, Washington, D. C., for defendant.

## OPINION AND ORDER ON MOTIONS FOR SUMMARY JUDGMENT

ELLIOTT, District Judge.

This is a tax refund suit in which the Plaintiffs seek to recover income taxes paid pursuant to deficiency assessments for the calendar years 1965 and 1966. There is no controversy concerning any fact material to a consideration of this case and counsel for Plaintiffs and coun-

sel for Defendant have each filed their respective motions for summary judgment.

The question presented is whether the decedent, Julia J. Davenport, should have included in her gross income corporate liquidation dividends where she donated a portion of her corporate stock to an irrevocable trust before the shareholder record date and actual payment of the proceeds, but after the shareholders of the corporation had adopted a plan of corporate liquidation.

At a special meeting of the Board of Directors of the M. A. Hanna Company on October 7, 1965 the board recommended that the company be liquidated and that its assets be distributed to the shareholders. At that time Julia J. Davenport owned 4,600 shares of the common stock of the company. There were 11,992,360 shares outstanding.

On November 8, 1965 Julia J. Davenport conferred with her friend, Charles R. Simmons, Jr., and her attorney, Heyward Vann, regarding the possibility of transferring shares of the common stock of the M. A. Hanna Company to an irrevocable trust and on or before November 12, 1965 she informed Mr. Simmons and Mr. Vann of her decision to transfer 3,600 shares of said stock to an irrevocable trust and instructed Mr. Vann to prepare the necessary instruments for her signature.

After Mr. Vann had prepared the instruments and Mr. Simmons had reviewed them an appointment was set up for 10:30 a. m., on November 24, 1965, at which time Julia J. Davenport signed the trust agreement.

The plan of complete liquidation of the M. A. Hanna Company was adopted by the shareholders of the company at a special meeting held on November 23, 1965 and later on the same day the Board of Directors of the company authorized the first and principal liquidating distribution to be made on December 27, 1965 to shareholders of record at the close of business on December 3, 1965. The company announced that it expected

the stock exchanges on which the stock was traded to suspend trading in the stock on November 30, 1965 prior to the opening of the market on that date, and that the company would close its transfer books and no transfers of stock would be made after December 3, 1965.

At the time Julia J. Davenport signed the trust agreement she gave no indication to Mr. Vann or Mr. Simmons that she had any knowledge of the results of the meetings of the stockholders and directors of M. A. Hanna Company which had been held on the previous date. Neither Mr. Vann nor Mr. Simmons were aware of the results of said meetings at the time Julia J. Davenport signed the trust agreement.

Immediately upon signing the trust agreement on November 24, 1965 Julia J. Davenport transferred 3,600 shares of her stock in the M. A. Hanna Company to the trustees under the agreement. She retained the remaining 1,000 shares.

The trust agreement provided that during the joint and several lives of Julia J. Davenport and her brother, Paul Mitchell Davenport, the trustees within their discretion could distribute part or all of the net income of the trust to or for the benefit of Julia J. Davenport and Paul Mitchell Davenport. The trust required the trustees to take into consideration all other income which the beneficiaries may have within the knowledge of the trustees. The trustees also had the discretionary power to encroach on the principal of the trust for the support of Julia J. Davenport first and her brother second, but only after said beneficiaries had exhausted all other means of support which they may have had within the knowledge of the trustees, with the corpus upon the death of the beneficiaries to be distributed among certain named charities.

The trust received the first and principal liquidating distribution arising out of the liquidation of the M. A. Hanna Company on December 27, 1965 and in calendar year 1966 the trust received the second and final liquidating distribution.

As heretofore noted, on December 3, 1965, the shareholders' record date for the first and principal liquidating distribution, Julia J. Davenport owned 1,000 shares of the common stock of said company and the trust owned 3,600 shares of said stock which had been transferred to the trust on November 24, 1965.

The trustees under the provisions of the trust agreement determined that neither Julia J. Davenport nor Paul Mitchell Davenport needed any financial assistance from the trust and the trustees accumulated all of the net income of the trust from the date of its creation on November 24, 1965 through September 30, 1968 and never paid any income or principal from the trust to Julia J. Davenport or Paul M. Davenport. On September 30, 1968, after payment of taxes and expenses, the trustees distributed all of the net income and all of the principal of said trust to the charitable institutions named as remainder beneficiaries in the trust agreement.

Julia J. Davenport timely filed her 1965 income tax return with the District Director of Internal Revenue and paid the tax shown to be due thereon. She also timely filed her 1966 United States income tax return.

Subsequently the Commissioner of Internal Revenue, following an audit by his agents, assessed against Julia J. Davenport a deficiency in her income tax for 1965 in the amount of $41,548.55 plus interest in the amount of $6,855.51, or a total of $48,404.06. The deficiency assessment for the year 1965 resulted from the inclusion in Julia J. Davenport's taxable income for the year 1965 of an amount of $98,661.73, this being 50% of the long term capital gain realized on the first liquidating distribution received by the trust during 1965. The Commissioner also assessed a deficiency with respect to her income tax for the year 1966 in the amount of $52.63 plus

interest in the amount of $5.53, or a total of $58.16. This deficiency assessment resulted from the inclusion in Julia J. Davenport's taxable income for the year 1966 of $3,060.00, this being 50% of the long term capital gain realized on the final liquidating distribution received by the trust during 1966.

In 1966 the Julia J. Davenport trust filed a fiduciary income tax return reporting as income the principal liquidating distributions received from the M. A. Hanna Company during both 1965 and 1966. No tax was paid, however, by the trust on the gain resulting from the distribution since the trust claimed a long term capital gain deduction for one-half of the gain and a charitable deduction for the other half.

On January 25, 1967 Paul M. Davenport died at the age of 76. His last will and testament created a trust that provided that the net income was to be distributed to his sister, Julia J. Davenport, during her lifetime. The trustees were authorized to encroach upon the principal if necessary for her support, taking into consideration her other means of support. On her death the corpus was to be distributed to certain legatees and charities. At the time of his death Paul M. Davenport owned real estate valued at $7,100.00, stocks and bonds valued at $46,892.04, and cash in the amount of $42,141.07.

On July 4, 1968 Julia J. Davenport died at the age of 86. At the time of her death she owned stocks and bonds valued at $55,195.78 and cash in the amount of $18,229.43. Her last will and testament dated May 31, 1963 created a trust and provided that the net income was to be distributed to her brother during his lifetime. The trustees were authorized to encroach on the principal if necessary for the support of her brother taking into consideration his other means of support. On the death of her brother the corpus was to be distributed to the same charities in the same proportions as provided in the trust agreement.

On February 21, 1969 the estate of Julia J. Davenport paid the deficiency assessments to the Internal Revenue Service in the total amount of $48,404.06 since she had died in the interim. Claims for refund were filed and upon their disallowance the instant suit was instituted.

■■ It is clear that Counsel for the Defendant regard this case as being one in which a taxpayer sought to avoid income taxes by making an anticipatory assignment of income and point out that such is forbidden by the rulings in such cases as Lucas v. Earl, 281 U.S.111, 50 S.Ct. 241, 74 L.Ed. 731 (1930), and Helvering v. Horst, 311 U.S. 112, 61 S.Ct. 144, 85 L.Ed. 75 (1940), and these cases relied upon do make it clear that a taxpayer may not avoid the tax on income by simply assigning the right to receive it without also transferring the property from which such right arises.

However, the Court of Appeals for the Fifth Circuit has had occasion to interpret the *Horst* and *Earl* cases as follows:

"Their rationale is that income from personal services or income-producing property cannot be 'attributed to a different tree from that on which [it] grew' . . . in advance of its realization in order to escape tax on that income. The assignments in all of those cases were gratuitous and the underlying asset which produced the income remained with the taxpayer-donor."

United States v. Georgia Railroad and Banking Company, 348 F.2d 278, at 285 (5 Cir. 1965).

The foregoing interpretation makes it clear that the assignment of income doctrine does not apply in the case which we here have under consideration because the underlying asset which produced the income was not retained by Julia J. Davenport.

However, the Defendant seeks to apply the *Horst* principle in spite of the fact that Julia J. Davenport irrevocably

transferred the stock certificates and the contingent right to dividends (the tree and the fruit), contending that the dividend income had accrued to her prior to the time the gift was made. To sustain this view it would be necessary for us to conclude that declared dividends payable to shareholders of record at some *future* date are income as of the declaration date. This contention has been dealt with in Estate of Putnam v. Commissioner of Internal Revenue, 324 U.S. 393, 65 S.Ct. 811, 89 L.Ed. 1023, wherein the Court said (at page 399, 65 S.Ct. at page 814):

> "The declaration of the dividends here in question fixes their amount but does not determine the distributee. He cannot be known with certainty until the record date. Nor does the stockholder have the right to receive payment upon the declaration. The words of the corporate resolution which arranges for the payment from the. stock record of a certain day determines the earliest time for possible receipt.

> "Under the income tax acts no stockholder has a separate and divisible taxable interest in the assets of a corporation even though those assets have been increased by earnings. Earnings, before declaration of dividends, while increasing the value of his stock, have never been treated as an event to mark taxable income to the stockholder. Mere declaration of a dividend does not alter the stockholder's interest in the corporate assets. . . . It is not the earnings of a corporation but the separation of those earnings by a completed dividend which assigns a part of those earnings to a stockholder."

See also Avery v. Commissioner of Internal Revenue, 292 U.S. 210, 54 S.Ct. 674, 78 L.Ed. 1216 (1934).

Certainly if Julia J. Davenport had sold her stock in the M. A. Hanna Company on November 24, 1965 the liquidating distribution later received would have been taxed to the purchaser and not to the seller, and there appears to be no reason why the irrevocable transfer which she made on that date should be accorded any different treatment.

There is yet another reason why the liquidating dividends had not accrued to Julia J. Davenport at the time of the transfer in question, although the stockholders had approved the liquidation. Her right as a shareholder of the M. A. Hanna Company to receive the dividends was contingent upon the failure of the shareholders of the company to revoke their prior action in adopting the plan of liquidation. M. A. Hanna Company was an Ohio corporation. Section 1701.86 of the Ohio Revised Code provides for the manner in which a corporation may be dissolved and its assets distributed. The Ohio statutes also provide the manner in which any action taken by the stockholders may be rescinded, it being provided in § 1701.53 that:

> "The authorization or taking of any action by vote, consent, waiver, or release of the shareholders may be rescinded or revoked by the same vote, consent, waiver, or release as at the time of rescission or revocation would be required to authorize or take such action in the first instance, subject to the contract rights of other persons."

It is thus clear that under Ohio law any action which had been taken by the shareholders could have been rescinded or revoked by subsequent shareholder action. Therefore, the action taken by the shareholders on November 23, 1969 could have been revoked by them prior to actual dissolution, and § 1701.86 of the Ohio Code provides that the dissolution of a corporation is not effective until the certificate of dissolution is filed with the Secretary of State. This event did not take place with regard to the M. A. Hanna .Company until December 18, 1965.

Further, there have been recent decisions which support the Taxpayer's con-

**952**

tention in this case. In Jacobs v. United States, 280 F.Supp. 437 (D.C.S.D.Ohio, 1966), affirmed 390 F.2d 877 (6 Cir. 1968), a taxpayer who had donated corporate stock to a charity after the shareholders of the corporation had adopted a plan of complete liquidation but before actual payment of the proceeds was made was held not to have assigned corporate liquidation dividends as income because the right to the dividend at the time of the donation could have been extinguished by abandonment of the liquidation plan by the shareholders. In Rushing v. Commissioner of Internal Revenue, 52 T.C. 888 (1969) the Tax Court gave consideration to the *Horst* decision, but rejected it and elected to follow the *Jacobs* case. This indicates that the Tax Court will follow the *Jacobs* decision in the future where an assignment of income issue is present. The most recent decision which has come to our attention is that of the District Court for the Southern District of West Virginia in Charleston National Bank v. United States, D.C., 323 F. Supp. 530 (1971), in which the issue presented was whether corporate liquidating distributions attributable to stock which is donated to a tax exempt corporation after the plan of complete liquidation is adopted, but before the liquidating distributions are made are includable in the donor's income. The Court, citing *Jacobs,* rejected the Government's reliance on the *Horst* decision and decided the case in favor of the taxpayer.

■ This Court is of the opinion that the *Jacobs* and *Charleston Bank* cases were properly decided and concludes that the declaration date of a corporate liquidating dividend is not the proper cut-off point for assignment of income purposes, for only at the subsequent record date can the distributee be determined with certainty.

Accordingly, the Defendant's motion for summary judgment is denied and the Plaintiffs' motion for summary judgment is sustained. Counsel for the Plaintiffs will prepare and submit an appropriate judgment to be entered.