ESTATE OF W. G. FARRIER, DECEASED (TERMINATED), R. E. MOORE, FORMER INDEPENDENT EXECUTOR, AND MAMIE F. FARRIER AND LURA FARRIER MOORE, HEIRS AT LAW AND SOLE BENEFICIARIES UNDER THE WILL OF W. G. FARRIER, DECEASED, PETITIONER, *v.* COMMISSIONER OF INTERNAL REVENUE, RESPONDENT.

MAMIE F. FARRIER, PETITIONER, *v.* COMMISSIONER OF INTERNAL REVENUE, RESPONDENT.

Docket Nos. 24539, 24540. Promulgated September 22, 1950.

*George S. Atkinson, Esq.,* and *Tom B. Rhodes, Jr., Esq.,* for the petitioners.

*J. Marvin Kelley, Esq.,* for the respondent.

OPINION.

LeMire, *Judge:* Our principal question here is whether decedent's estate was closed, or should be treated as closed, for income tax purposes, for the taxable years 1945 to 1948, inclusive, so that the income therefrom is all taxable to the life beneficiary. Respondent contends that the period of administration of the estate must be considered as having ended prior to May 31, 1945. Petitioners contend that the estate was not closed until after the sale of the principal assets by the executor in 1948. The effect of continuing the administration and distributing only a portion of the income each year was to lessen the over-all tax burden on the income of the estate.

Section 161, Internal Revenue Code, provides that "Income received by estates of deceased persons during the period of administration

or settlement of the estate" is subject to the same income tax as is imposed on individuals, and, that with exceptions not here material, "shall be computed upon the net income of the estate or trust, and shall be paid by the fiduciary." If the estate was closed during the fiscal year ended May 31, 1945, as respondent contends, then the income thereof became currently distributable and under section 162 (b) of the Internal Revenue Code is taxable to the beneficiary.

Section 29.162–1 of Regulations 111 provides that:

* * * The period of administration or settlement of the estate is the period required by the executor or administrator to perform the ordinary duties pertaining to administration, in particular the collection of assets and the payment of debts and legacies. It is the time actually required for this purpose, whether longer or shorter than the period specified in the local statute for the settlement of estates. * * *

This Court has expressed its approval of the above-quoted provisions of the Regulations, or their counterpart in previous Regulations, in several recent cases. See *Walter A. Frederich*, 2 T. C. 936, revd., 145 Fed. (2d) 796 (CCA–5); *Estate of J. P. Armstrong*, 2 T. C. 731; *Pierce Estates, Inc.*, 3 T. C. 875; *William C. Chick*, 7 T. C. 1414, affd., *Chick* v. *Commissioner*, 166 Fed. (2d) 337 (CCA–1), certiorari denied 334 U. S. 845; *Caro Du Bignon Alston*, 8 T. C. 525; *Marin Caratan*, 14 T. C. 934.

The *Walter A. Frederich* case, *supra*, involved a Florida estate where the administration of estates of deceased persons is under the jurisdiction of the County Judge's Court. The decedent died in 1934 and his debts were all paid off within a year but his heirs and his surviving partner agreed, with the retroactive approval of the county judge, to continue the estate in the partnership, with the surviving partner serving as administrator by court appointment. We held that the estate was not in process of administration in 1937, 1938, and 1939. The court reversed, saying that:

It seems clear that the act and also the regulation each contemplates that during the period that the estate is actually under administration and unsettled the income shall be reported by, and the undistributed portion thereof taxed to, the estate.

The court said further that the orders of the county judge approving the continuation of the estate in the partnership business were "valid and conclusive determinations that the period legally and properly required for the winding up of the estate had not expired even in 1942."

In the case at bar there was no order of the probate court or any local court authorizing the continuation of the administration of the estate beyond the period when the respondent determined that it was closed. The administration of the estate under the laws of the State of Texas was not subject to the jurisdiction of the probate court.

*Chick* v. *Commissioner, supra,* involved a Massachusetts estate which was subject to the jurisdiction of the probate court but the court had not ordered a continuation of the administration beyond the time when the Commissioner determined it to be closed. The court there said, after referring to the ruling of the Circuit Court of Appeals for the Fifth Circuit in the *Frederich* case, that:

\* \* \* We express no opinion upon it \* \* \* [the question under consideration in the *Frederich* case] since the probate court was not asked to take and did not take any affirmative action of any kind with respect to continuing the administration of the estate here involved.

All we are called upon to hold here, and all we do hold, is that Congress can, and in the interest of a uniform system of federal income taxation did, clothe the Commissioner and the Tax Court with power to determine, at least absent conflicting valid affirmative action by the state court having jurisdiction in the premises, that the period of administration or settlement of an estate has terminated for income tax purposes when the executor or administrator has performed all the ordinary duties incumbent upon him in his fiduciary capacity.

The same distinction, perhaps more pronounced, is found between the *Frederich* case and the instant case; since here the administration of the estate was not subject to the jurisdiction of any state court. No approval of any court was obtained or required to extend the administration of the estate. The matter was left entirely to the discretion of the independent executor. He was accountable to the probate court only for probating the will and filing "an inventory and appraisement \* \* \* and list of claims" of the estate. See Art. 3436, Vernon's Texas Civil Statutes.

Viewing our question here as one of fact, namely, what was the period actually required for the performance of the ordinary duties pertaining to the administration of the estate, such as the collection of assets and payment of the debts and legacies, we must conclude, as the respondent has determined, that the period of administration did not extend beyond the close of the fiscal year ended May 31, 1945. The evidence indicates that by that time all of the decedent's debts had been paid and that some of the assets. those which the beneficiary transferred by gift to her daughter, had already been distributed. So far as the evidence shows, there was no reason. relating to the settlement of the estate, why the assets should not all have been distributed to the beneficiary by the end of the taxable year 1945.

Petitioners argue that the executor was under a promise to the decedent, and under a moral obligation, to sell a portion of the assets, the peach orchards and vegetable plant business, before closing the estate and that before such a sale could be made on reasonable terms it was necessary for him to establish a sound credit rating for the estate, as a going business, and make certain improvements in the properties.

The decedent in his will did not require the executor to sell any of the properties of the estate. On the other hand, he said that:

It is my will and desire that all of the property, both real and personal, I may die seized and possessed of, after the payment of my just debts * * * shall pass to my beloved wife, Mamie F. Farrier, for the period of her natural life. but with full power to manage, sell, dispose of as she may wish or see proper * * *.

He expressed the further desire that in selling any of the properties his wife should consult with the executor.

Building up a credit rating for the going business of an estate is in no sense a duty or an ordinary function of an executor. It seems to us that the things which the executor claims required a continuance of the administration of the estate might just as well have been done by the distributee with the advice and, if necessary, the assistance of the executor, in accordance with the expressed wishes of the decedent.

We think that the administration of the estate must be deemed to have been completed prior to the close of the fiscal year ended May 31, 1945.

This leaves the question of whether Mamie F. Farrier realized taxable income by making a gift of certain cattle which she received from the decedent's estate to her daughter in August 1944. Respondent seeks to apply the rule of *Helvering* v. *Horst*, 311 U. S. 112. In that case the Supreme Court held that the owner of bonds who made a gift to his son of negotiable interest coupons thereon. which matured and were cashed by the son later in the taxable year, realized income in the amount of such interest coupons. Applying the doctrine of the *Horst* case, the respondent ruled in I. T. 3932, 1948-2 C. B. 7, that a gift by a father to his son of feeder cattle, which he had raised and which had no cost basis in his hands, resulted in the receipt of taxable income by the father to the extent of the fair market value of the cattle at the date of the gift. That ruling is relied upon by the respondent in his brief here.

The subject matter of the gift here was a herd of cattle, consisting of old cows, which the decedent had owned at the time of his death, and 80 head of heifers and calves which had been raised by the estate. It is the value of the heifers and calves only which respondent seeks to tax to the petitioner as income realized by reason of the gift.

In our opinion, the doctrine of the *Horst* case is not applicable here.[1] The Court there pointed out that the donor had two independent and separable kinds of property rights in the bonds, one the right to receive the principal at maturity of the bonds and the other to receive the interest payments; and that it was the "power to command its [the interest] payment to others which constituted an economic gain

[1] For a full discussion of this question see article by Robert N. Miller, Tax Law Review (Nov. 1949), pp. 1-15.

to him." The question there, the Court said, was "whether because one who in fact receives payment for services or interest payments is taxable only on his receipt of the payments, he can escape all tax by giving away his right to income in advance of payment." In the instant case, there is no such question. No income is involved. There had been no sale of the cattle and no income realized either by the donor or anyone else. The donor simply made a gift of the property itself before realization of any income thereon. The income, if there was ever to be any, had to await the sale of the cattle. In this respect the facts here differ from those dealt with in I. T. 3932, *supra*, where the cattle had been sold by the donee and the question posed was whether the profit realized on the sale was to be taxed to the donor or to the donee. Whatever may be said of this factual difference, we think that an erroneous result is reached by applying the ruling to the facts in this case.

For all the evidence shows, or the respondent claims, there was no contract for sale of the cattle or thought of their sale at the time the gift was made. There was, in the gift, no element of an assignment of earned income. We think that the respondent erred in his determination that the gift resulted in taxable gain to the donor.

Reviewed by the Court.

*Decisions will be entered under Rule 50.*