RALPH E. HEDGES, PETITIONER, *v.* COMMISSIONER OF INTERNAL REVENUE, RESPONDENT.

STANLEY HEDGES CHILDRESS, PETITIONER, *v.* COMMISSIONER OF INTERNAL REVENUE, RESPONDENT.

Docket Nos. 29288 and 29469. Promulgated June 30, 1952.

*Kenneth C. Hawkins*, Esq., and *A. R. Kehoe*, Esq., for the petitioners.

*John H. Pigg*, Esq., for the respondent.

684

## OPINION.

MURDOCK, *Judge:* The Commissioner argues that John properly reported the dividends since he received them under color of title and claim of right; they were not taxable to a trust *ex maleficio* or any other trust recognized as a taxpayer; and the petitioners are taxable in 1944 with the $57,439 which they received, not as heirs of Kittie, but as creditors of John's estate under a claim, the gravamen of which was loss of profits, since under no sound theory could the dividends have been reported by or for them in the years of payment by the corporation. The petitioners argue that the dividends were taxable currently to a constructive trust of which John was trustee. They state that the tax which the Commissioner has already received on the dividends from John substantially exceeds that which would have been due if the income had been properly reported during those years either by a fiduciary or by the two petitioners whose income was much less than John's during those years. They point out that to pile up all of this income in the one taxable year 1944 would impose upon them a very high tax and would be an extreme hardship in view of the fact that

they were entitled to receive this income over a long series of lower tax years during which their tax burdens, if any, would have been small, and the fault of John should not impose upon them the hardships inherent in the determination of the Commissioner.

John became the administrator of Kittie's estate and held title to the two blocks of stock while acting as fiduciary. The record does not show the value of that stock at the time Kittie died but obviously John thought it had some value because he was careful to conceal it from the lawful owners and to have it placed in his name. He knew it was community property. The probate court ordered distribution of Kittie's estate and discharge of the administrator on October 4, 1924. That would have properly terminated the administration and settlement of her estate for all purposes had the administrator not intentionally omitted the stock from the list of assets subject to administration. He thereafter necessarily continued to hold the shares in a fiduciary capacity and there was no complete and legal settlement of Kittie's estate until the part thereof which belonged to these two petitioners was turned over to them in 1944 along with amounts equivalent to the dividends on the stock paid during the time when it was wrongfully withheld from their possession by John, the administrator of Kittie's estate.

Both parties agree that the determining factor in the petitioners' acquisition of the equivalent of the dividends is the basic nature of the claim upon which the recovery was made. The real basis for the petitioners' claims against the estate of John was the rights which they acquired as heirs of Kittie. John, during his lifetime, or a new administrator for Kittie's estate after his death, could have been required to distribute to the petitioners not only the stock but also funds equivalent to the dividends. The two petitioners, learning for the first time of their rights, asserted them as heirs of Kittie, they were not contested, and the property which John had been holding was turned over to its owners.

Section 142 requires "every fiduciary" to file a return if the gross or net income which he is to report exceeds stated amounts. Section 161 (a) (3) imposes a tax upon "Income received by estates of deceased persons during the period of administration or settlement of the estate." Section 162 (c) allows the estate of a deceased person during the period of administration or settlement of the estate a deduction for the amount of the income of the estate "for its taxable year, which is properly paid or credited during such year to any legatee, heir, or beneficiary, but the amount so allowed as a deduction shall be included in computing the net income of the legatee, heir, or beneficiary."

The only question here is whether the entire amounts which the petitioners received in 1944 are taxable income to them for that year. If they had recovered interest on the dividends it would have been taxable to them in its entirety in 1944, and likewise if John had sold the stock and the petitioners had sued him for their loss of dividends on the stock, their recovery might have been taxable in its entirety in the year received because only then would they have had an unconditional, unqualified right to receive it. Cf. *Swastika Oil & Gas Co. v. Commissioner*, 123 F. 2d 382, 384, certiorari denied 317 U. S. 639. However, those things did not happen. John concealed from Kittie's heirs the fact that he held the stock and was receiving the dividends. The gravamen of the claim of the petitioners was not for loss of profits but was for the stock which belonged to them as heirs of Kittie and for the dividends received on that stock, both of which John, who was administrator of Kittie's estate, possessed at the time he died. Both John and his executrix knew and admitted that the stock and dividends belonged to the petitioners. They required John, through his estate, to account to them for what was already theirs.

Those dividends were taxable to some taxpayer when they were received. The petitioners were not the ones, however, since they used a cash method, they had not received the dividends, and they did not even know during those years of their rights to the stock or to the dividends. Regulations 111, section 29.161–1, provides that the period of administration or settlement of an estate is the time actually required to administer and settle the estate whether it is longer or shorter than the period specified in the local statute for settlements of estates. That regulation has been approved in a number of cases in some of which it was held that the "period of administration or settlement of the estate" of a deceased person for the purposes of sections 161 (a) (3) and 162 (c) may differ from the period of administration of the estate terminated by an order of the probate court. *Walter A. Frederich*, 2 T. C. 936, revd., 145 F. 2d 796; *William C. Chick*, 7 T. C. 1414, affd. 166 F. 2d 337; *Estate of W. G. Farrier*, 15 T. C. 277; *Josephine Stewart*, 16 T. C. 1; *Alma Williams*, 16 T. C. 893. The probate court in the present case would not have closed the administration and discharged John as administrator of Kittie's estate if it had known that he was holding Sunshine Mining Company stock belonging to the estate which he had not included in the administration of the estate. John actually received dividends on the stock in each year from 1927 until 1944, and if the Commissioner had had knowledge of the facts he could have taxed those dividends to John in a fiduciary capacity as they were received under his regulation and section 161 (a) (3). No distribution of those dividends was made to the heirs in

any taxable year except the year 1944. Thus, no deduction under section 162 (c) was proper for any year except 1944. The dividends declared and paid in 1944 were actually distributed to the petitioners in that year and are deductible by the fiduciary and taxable to the petitioners for 1944. John, so far as the record shows, never filed any income tax returns as administrator of the estate of Kittie or as a trustee for the estate which would bar the Commissioner from collecting any taxes lawfully due from him as administrator or trustee of that estate. Since the dividends for years prior to 1944 were taxable to the fiduciary without deduction, they were not thereafter taxable to the petitioners when finally distributed to them. *Elnora C. Haag*, 19 B. T. A. 982, 990, affd. 59 F. 2d 514; *Commissioner v. Owens*, 78 F. 2d 768, 776.

Ralph has failed to show that the Commissioner's allocation of the attorney fee was improper.

Reviewed by the Court.

*Decisions will be entered under Rule 50.*

Hill and Withey, *JJ*., concur in the result.

———

Tietjens, *J*., dissenting: The majority opinion apparently is based on the theory that John, despite the fact that the probate court had discharged him as administrator and closed the administration and despite the fact that he had wrongfully had the stock transferred to his own name, had collected the dividends as his own thereafter and paid income tax thereon in his individual capacity, was, nevertheless, still a fiduciary within the meaning of sections 161 and 162 of the Code and that the period of administration of the estate still continued under Regulations 111, section 29.161–1. I think this theory is erroneous. It is appreciated that periods of administration may extend for purposes of the regulations beyond the time the administration is closed by the appropriate court, for instance, in the case of administering after discovered assets. But, here, John was in no sense acting with reference to the stock on behalf of the estate or in its interest. He was really a wrongdoer in that respect. I do not think his actions extended the "period of administration." Aside from this theory it seems to me the case is governed by the principles stated in *Virginia Hansen Vincent*, 18 T. C. 339, and the dividends disgorged to the petitioners and made available to them for the first time in 1944 should be taxed to them in that year.

Kern, Turner, and Raum, *JJ*., agree with this dissent.