STUART A. ROGERS AND DESSIE MAE B. ROGERS, PETITIONERS, *v.* COMMISSIONER OF INTERNAL REVENUE, RESPONDENT.

Docket No. 86804. Filed August 30, 1962.

*Joseph A. Whittle, Esq.*, for the petitioners.
*Donald C. Knickerbocker, Esq.*, for the respondent.

FORRESTER, *Judge:* Respondent determined a deficiency in the income tax of petitioners for the taxable year 1958 in the amount of $2,094.83. Petitioners have conceded certain adjustments, and the sole issue remaining for our consideration is whether petitioners made a gift of an equity in timber or a gift of the proceeds of the sale of timber.

### FINDINGS OF FACT.

Some of the facts have been stipulated and are so found.

Petitioners Stuart A. Rogers (hereinafter referred to as Stuart)

and Dessie Mae B. Rogers are husband and wife residing in Chester, Georgia. They filed a joint Federal income tax return for the year 1958 with the district director of internal revenue at Atlanta, Georgia.

In June 1958, Stuart was a steward in the Methodist Church. Epworth By The Sea is an agency of the Methodist Church located on St. Simons Island, Georgia. In 1958 Reverend Frank Nalls, a Methodist minister, was treasurer and superintendent of Epworth By The Sea and also secretary-treasurer of the board of trustees of the South Georgia Conference of the Methodist Church, Inc., the corporate body owning all of the conference property.

In 1958, Epworth By The Sea planned to build a kitchen costing approximately $30,000. Several times prior to June 12, 1958, Nalls had contacted Stuart in an effort to procure a gift for the kitchen.

At this time petitioners owned certain land in Laurens County, Georgia, on which stood a growth of pine and hardwood timber. On June 11, 1958, Nalls, Stuart, and the pastor of the church in Chester, Georgia, went out to look at the timber. They agreed that the timber was worth more than $10,000.

The next day, June 12, 1958, Stuart wrote Nalls a letter stating as follows:

DEAR MR. NALLS:

This letter will constitute a gift to Epworth By The Sea of an equity of $10,000.00 in a timber lease on timber on Lot 5 and Lot 6, 19th District of Laurens County.

You may either hold this equity or sell it. If you decide to sell, I shall be glad to be of service in helping you to arrange the sale.

Best personal regards.

Sincerely yours,

(Sgd.) S. A. Rogers
S. A. ROGERS

In response to this letter Nalls wrote petitioners a letter dated June 13, 1958, stating in part as follows:

DEAR MR. AND MRS. ROGERS:

This will acknowledge with gratitude receipt of your letter of June 11th,[1] and of your gift of an equity of $10,000.00 in a timber stand on your property.

You state that if we desire to sell this equity you will arrange the sale for us. We shall appreciate it if you will sell the timber and request the buyer to send check to us.

In response to Nalls' reply Stuart contacted Henry Griffin of the Edmondson-Griffin Lumber Company regarding the sale of the timber. The timber was shown to Griffin personally, and a timber cruiser was sent down to cruise the timber. Thereafter Griffin agreed

---

[1] The parties have stipulated that this letter acknowledged receipt of the June 12 letter, and that Nalls' reference to a June 11 letter was erroneous.

to purchase the timber for the company, and on August 27, 1958, a timber lease was executed between Stuart and Epworth By The Sea, as sellers, and the Edmondson-Griffin Lumber Company, as the buyer.

The buyer put Epworth By The Sea's name on the lease because Stuart had told him that Epworth owned the timber and had shown Griffin the June 13 letter, *supra*. Buyer put Stuart's name on the lease because he owned the land upon which the timber stood and had timber in excess of that given away.

The sale price for the timber was $16,000, and the buyer immediately paid $10,000 of this amount directly to Epworth. The balance of $6,000 was paid to Stuart 2 months thereafter.

The $10,000 gift by petitioners to Epworth By The Sea was included in the contributions of $12,676.44 to the Methodist Church listed by them on the schedule of donations attached to their 1958 return.

Petitioners did not report as income on their 1958 return the $10,000 paid by Edmondson-Griffin Lumber Company to Epworth By The Sea. Respondent determined that the $10,000 constituted capital gain to petitioners and made adjustments accordingly.

OPINION.

The parties agree that Stuart made a valid gift to Epworth By The Sea in 1958 but respondent contends that the exchange of letters on June 12 and 13, 1958, amounts to an anticipatory arrangement whereby Stuart was assigning income he expected to receive in the near future, and thus that the subject of the gift was $10,000 to be paid out of proceeds realized upon a subsequent sale of the timber. Respondent urges that this was the true substance of the entire transaction, and that therefore petitioners realized capital gain on the entire August 27, 1958, sale of the standing timber to Edmondson-Griffin Lumber Company.

Respondent concedes that charitable gifts may be in the form of property rather than money and that if the donated property has appreciated in value that such appreciation is not taxable income to the donor. Rev. Rul. 55-410, 1955-1 C.B. 297. Thus respondent poses as the only question now before us: "just what [was it that] Mr. Rogers gave to Epworth By The Sea by his letter of June 12, 1958 [?]"

Respondent's position and reasoning, in a transaction as straightforward as this one is, and embodied in written instruments, is hard for us to understand. Respondent's principal argument seems to be that since the subject of the gift was an "equity," rather than "an

undivided interest, such as one-fourth or one-half," that it follows that the gift was only to be paid out of proceeds of a subsequent sale. Respondent cites no authority for such position and reasoning, we have found none, and considering the wealth of cases and revenue rulings dealing with all aspects of this entire subject we feel that respondent's position here is capricious.

Respondent produced no witnesses at the trial of this case. Stuart and Henry Griffin both testified that standing timber could not be segregated or designated exactly as to amount (as in this case, $10,000 worth) except by use of the equity concept, and we found their testimony convincing, accurate, and reliable. Petitioner employed accurate and understandable language to accomplish a gift of $10,000 worth of standing timber and we will not penalize him because respondent would have preferred the use of other language.

The facts of *Campbell* v. *Prothro*, 209 F. 2d 331 (C.A. 5, 1954), are very similar to those in the instant case. There plaintiff conveyed to the YMCA "one hundred head of the average of the calves branded * * * (PP) * * * of the 1948 calf crop" and provided for their selection by grantee's agent. About 5 months later the entire crop of 792 calves was sold for $87,000,[2] $11,000[3] of which was received by the YMCA. The collector contended that the subject of the gift was not calves, but proceeds from their sale. In holding for taxpayer, the court said (p. 335):

We have found no case, we have been referred to none holding that unrealized appreciation in the value * * * [when] given away would be regarded as ordinary income merely because * * * when [if] sold by the taxpayer [it] would have been ordinary income. * * *

We are in complete accord with this view. See also *Estate of W. G. Farrier*, 15 T.C. 277 (1950), acq. 1955–1 C.B. 4; mineral interests, *Johnson* v. *Wiseman*, an unreported case (W.D. Okla. 1955, 48 A.F.T.R. 1857, 55–2 U.S.T.C. par. 9668); unharvested wheat, *Elsie SoRelle*, 22 T.C. 459, 475–479 (1954), acq. 1955–1 C.B. 6; unharvested cotton, *South Lake Farms, Inc.*, 36 T.C. 1027 (1961), on appeal (C.A. 9); oil, gas, and minerals in place, *Lester A. Nordan*, 22 T.C. 1132 (1954), acq. 1959–1 C.B. 4; *Caldwell* v. *Campbell*, 218 F. 2d 567 (C.A. 5, 1955); and stock, *Winton* v. *Kelm* 122 F. Supp. 649 (D. Minn. 1954); *Apt* v. *Birmingham*, 89 F. Supp. 361 (N.D. Iowa 1950), and cases cited therein. See Rev. Rul. 55–138, 55–1 C.B. 223; Rev. Rul. 57–328, 57–2 C.B. 229; Rev. Rul. 55–410, *supra*.

---

[2] Nearest thousand.
[3] Nearest thousand.

Respondent argues further that petitioners made a gift of $10,000 to be paid from the proceeds of the sale of the timber, citing *Helvering* v. *Horst*, 311 U.S. 112 (1940), and similar cases. He relies on the precise wording of the June 12 letter giving an equity "in a timber lease" and on the imminence of the sale of the timber.

This is not a case of anticipatory assignment of income. In *Helvering* v. *Horst*, *supra*, *Commissioner* v. *P. G. Lake, Inc.*, 356 U.S. 260 (1958), and *Eugene T. Flewellen*, 32 T.C. 317 (1959), there was a transfer of the right to current income although the transferor retained the income-producing property. Cases of this type were distinguished in *Caldwell* v. *Campbell*, *supra* at 573:

> In every one of these cases what and all that was involved was the appointment of someone to collect money which, if collected by the appointer, would have been income to him. In none of them was it held that an assignment of the tree which produced the income, as here the mineral interests, would, when accounted for to the owner by the oil company which produced them in money rather than in kind, be treated as the income of the transferor merely because if he had remained the owner, they would have been his income.

> It seems clear to us, then, that the whole idea back of the commissioner's and the collector's actions and contentions is an attempted denial of the fundamental principle of taxation. This is that a taxpayer is entitled to take any legal course with his property or business which lightens or lessens his tax load, and that the fact that an arrangement reduces his taxes is of no moment in determining its validity, if only it is clear that the transaction was real and not a sham, that is if it was what it purported to be, a real and effective transfer of title from the taxpayer to another.

The test seems to be simple: Did the donor part with title to the property producing the income? If he did, then the sale by the donee does not result in taxation to the donor. But if the donor keeps title to the property and gives away only current income, such income is taxed to him as if actually received to prevent planned income splitting.

Stuart made a valid gift of an equity in certain timber. No timber lease existed on June 12, 1958, and we view the letter bearing that date as giving an equity in the timber stand. This gift, when delivered and accepted, gave the donee the indefeasible right to the first $10,000 to be realized from the timber stand. Stuart parted with an equity of $10,000 in his timber, and the subsequent sale thereof does not cause realization of income by him.

Because of uncontested adjustments,

*Decision will be entered under Rule 50.*