Walter R. CARRINGTON and Ada Raye Carrington, Petitioners-Appellees,

v.

COMMISSIONER OF INTERNAL REVENUE, Respondent-Appellant.

No. 72-1644.

United States Court of Appeals,
Fifth Circuit.

April 23, 1973.

**705**

Scott P. Crampton, Asst. Atty. Gen.,
Meyer Rothwacks, Richard Farber,
Attys., Tax Div., Dept. of Justice, Lee
H. Henkel, Jr., Acting Chief Counsel,
Chris J. Ray, Atty., Internal Revenue
Service, Washington, D. C., for respondent-appellant.

E. Richard Criss, Jr., Austin, Tex., for
petitioners-appellees.

Before BROWN, Chief Judge, and
MOORE * and RONEY, Circuit Judges.

MOORE, Circuit Judge:

This is an appeal by the Commissioner
of Internal Revenue (the Commissioner)
from a decision of the Tax Court (C.
Moxley Featherston, Judge) [1] that there
was no deficiency in the Federal income
tax for the taxable year 1966 paid by
appellees, Walter R. Carrington and Ada
Raye Carrington (collectively referred to
as Carrington). The tax deficiency assessed was $5,573.71 and was based upon
the Commissioner's increase in Carrington income of $10,959.80, which the
Commissioner claimed was an unreported dividend. In his deficiency notice,
the Commissioner asserted that "redemption by Cardinal Construction Company of 51 shares of its stock which you
had contributed to St. Matthews Episcopal Church was equivalent to a dividend
to you of $10,959.80 in 1966."

The background facts are not complicated. Carrington was a member of the
vestry, the governing body, of the
Church and a member of a committee
created for the purpose of acquiring a
new rectory. Carrington was the sole
stockholder of two corporations, Cardinal Construction Company (Cardinal)
and Day Realty Company (Day). Cardinal and Day as a partnership (Cardinal-Day Enterprises) owned a residence
suitable for a rectory.

The stipulation of facts states:

The purpose of the various integrated transactions involving the real
property described in paragraph 9,
above, was to place the property in
the hands of St. Matthews Episcopal
Church at the maximum tax benefit to
petitioners, Walter R. Carrington and
Ada Raye Carrington. (Par. 16, Appendix at 26.)

As the Tax Court recognized,
there were several ways in which the
transaction could have been handled,
each with its own tax consequences.
Carrington "was entitled to choose the
method most favorable to him tax-wise.
Gregory v. Helvering, 293 U.S. 465, 469
[55 S.Ct. 266, 79 L.Ed. 596] (1935);
Granite Trust Co. v. United States, 238
F.2d 670, 675 (1st Cir. 1956)." [2]

The method selected was as follows:

On December 19, 1966, Carrington
transferred fifty-one of the one hundred
outstanding shares of Cardinal stock, of
which he was the owner, to the Church.

---

* Hon. Leonard P. Moore, Senior Circuit Judge of the Second Circuit, sitting by designation.

1. Judge Featherston's opinion is unofficially reported at T.C. Memo 1971–222 at 950.

2. *Id.* at 953.

On December 23, 1966, Cardinal-Day conveyed the residence to Cardinal subject to an outstanding mortgage of $30,600.

On December 27, 1966, Cardinal redeemed the fifty-one shares of its stock held by the Church and, as consideration therefor, conveyed the residence subject to the mortgage to the Church.[3] The value (undisputed) of the residence was $41,559.80. The equity ($41,559.80 less the mortgage of $30,600) accounts for the $10,959.80 which the Commissioner claims was dividend income chargeable to Carrington.

Cardinal did not reissue the fifty-one shares and on June 30, 1967, Cardinal was liquidated.

The Commissioner argues that Carrington's gift of stock "although complete in form, must be disregarded for tax purposes because it was merely an intermediate step in the taxpayer's overall plan" to transfer the residence to the Church "without the imposition of a dividend tax on the distribution" (Gov't Br. at 9). In other words, because several steps were required to accomplish the transfer, the Commissioner would regard the redemption as if made while Carrington was the owner of all the Cardinal stock.

There is no doubt that in any "step transaction" situation careful analysis of the transaction as a whole must be made to distinguish between proper tax avoidance and illegal tax evasion.

The Commissioner argues that to arrive at the "substance" of this transaction we should refuse to recognize the transfer of the Cardinal stock to the Church and the subsequent redemption of that stock eight days later. Having done this, says the Commissioner, the exchange of the fifty-one shares for the rectory may then be regarded as a redemption by Carrington, the sole Cardinal shareholder, which distribution, under United States v. Davis, 397 U.S. 301,

307, 90 S.Ct. 1041, 25 L.Ed.2d 323 (1970) would be included in Carrington's gross income for 1966.

Kanawha Gas & Util. Co. v. Commissioner, 214 F.2d 685 (5th Cir. 1954) contains a frequently cited exposition of the problems posed by a transaction which has involved a "step transaction".

In determining the incidence of taxation, we must look through form and search out the substance of a transaction. [citations omitted] .This basic concept of tax law is particularly pertinent to cases involving a series of transactions designed and executed as parts of a unitary plan to achieve an intended result. Such plans will be viewed as a whole regardless of whether the effect of so doing is imposition of or relief from taxation.

214 F.2d at 691

*See also* Commissioner v. Court Holding Co., 324 U.S. 331, 334, 65 S.Ct. 707, 89 L.Ed. 981 (1945).

■ It is, of course, elementary that Carrington had "[t]he legal right * * * to decrease the amount of what otherwise would be his taxes, or altogether avoid them, by means which the law permits * * *." Gregory v. Helvering, *supra*, 293 U.S. at 469, 55 S. Ct. 266 at 267; Knetsch v. United States, 364 U.S. 361, 365, 81 S.Ct. 132, 5 L.Ed.2d 128 (1960); Rupe Investment Corp v. Commissioner, 266 F.2d 624, 629 (5th Cir. 1959). Thus the mere fact that the transactions here questioned were concededly designed to limit Carrington's tax liability establishes nothing with. regard to the question of the proper taxation of these transactions.

There have been several cases which have presented situations analogous to that which we face here. In Stuart A. Rogers, 38 T.C. 785 (1962), the taxpayer made a gift to a church of a $10,000 equity in a stand of timber. As an accommodation to the church, the taxpayer arranged the sale of the church's timber in

---

3. The property was actually held for the use of St. Matthews Episcopal Church by the Prostestant Episcopal Church Council of the Diocese of Texas, which holds all real property owned by the Episcopal Church in Texas.

conjunction with his sale of other timber. In deciding that the taxpayer had received no income from this sale of the church's timber, the Tax Court said:

> The test seems to be simple: Did the donor part with title to the property producing the income? If he did, then the sale by the donee does not result in taxation to the donor.
>
> \* \* \* \* \* \*
>
> This gift, when delivered and accepted, gave the donee the indefeasible right to the first $10,000 to be realized from the timber stand. \* \* \* The subsequent sale thereof does not cause realization of income by him. 38 T.C. at 789

In *Rogers, supra,* the Tax Court relied in part on our holding in Campbell v. Prothro, 209 F.2d 331 (5th Cir. 1954). In that case one hundred calves were donated to a charitable organization without actually being separated from the taxpayer's remaining cattle. Upon the sale of all of these cattle, the proceeds from the sale of the donated cattle were paid to the donee. The Commissioner contended that these proceeds should be treated as income to the taxpayer-donor. Even though there was some doubt in that case as to whether there had been a bona fide gift,[4] this Court held that the taxpayer had not received income. 209 F.2d at 336.

Two cases involving complete liquidations of corporations are also instructive of the law in this area. Jacobs v. United States[5] and Winton v. Kelm[6] each involved the donation of corporate stock to charity immediately prior to payment of a liquidating dividend. In both cases the gifts were held to be effective and thus the taxpayers were found to have received no income from the liquidating dividend paid on the donated shares. Apt v. Birmingham[7] concerned a gift of shares to a taxpayer's wife just seven days prior to the distribution of a liquidating dividend. In that case, too, the Commissioner urged that "under the *realities* of the situation" there was no gift of stock, but only of the distribution in liquidation. 89 F.Supp. at 368 (emphasis added). In each of these cases the Commissioner's argument that the gift step of the transaction should be ignored failed to persuade the courts. Other courts have also rejected this argument of the Commissioner in similar cases. Sheppard v. United States, 361 F.2d 972, 176 Ct.Cl. 244 (1966) (donation of interests in racing horse); Humacid Co., 42 T.C. 894 (1964) (contribution of promissory notes); White v. Brodrick, 104 F.Supp. 213 (D.Kan.), appeal dismissed 198 F.2d 751 (10th Cir. 1952) (donation of grain); Elsie SoRelle, 22 T.C. 459, 475–479 (1954) (gifts of land on which crops had been planted); Mamie F. Farrier, 15 T.C. 277, 283–284 (1950) (gift of cattle).

The Commissioner suggests that United States v. General Geophysical Co.[8] and Crenshaw v. United States[9] in this Circuit should control our decision in this case.

*General Geophysical* concerned the propriety of a stepped-up basis for certain depreciable assets. Two of Geophysical's major stockholders redeemed their shares for depreciable assets with a tax basis of $169,290. Later the same day these assets were sold back to the corporation for their fair market value of $746,525. Judge Wisdom's opinion in that case pointed out that:

> The facts of these transactions will not support a holding that the corpo-

4. See the dissenting opinion of the Hon. Richard T. Rives, U.S.C.J., 209 F.2d 336–337.

5. Jacobs v. United States, 280 F.Supp. 437 (S.D.Ohio 1966), aff'd, 390 F.2d 877 (6th Cir. 1968).

6. Winton v. Kelm, 122 F.Supp. 649 (D. Minn.1954).

7. Apt v. Birmingham, 89 F.Supp. 361 (N. D.Iowa 1950).

8. United States v. General Geophysical Co., 296 F.2d 86 (5th Cir. 1961), cert. denied, 369 U.S. 849, 82 S.Ct. 932, 8 L.Ed.2d 8 (1962).

9. Crenshaw v. United States, 450 F.2d 472 (5th Cir.), cert. denied, 408 U.S. 923, 92 S.Ct. 2490, 33 L.Ed.2d 333 (1972).

ration had terminated its ownership * * *. It parted with bare legal title to the property for a few short hours. It made no physical delivery of any of the assets. Its control and use of the property were never interrupted. 296 F.2d at 89

The Court denied the corporation a stepped-up basis for its assets. This case is distinguishable from the instant case not only because the facts establish that there was no bona fide loss of dominion and control by the corporation, but also because the case concerned the question of the proper basis for depreciable assets held by a corporation. Crenshaw v. United States involved a complex financial transaction designed to make the sale of an interest in a partnership under Section 741 of the Internal Revenue Code appear to be a "liquidating dividend" of a partnership interest, which, under Section 736 of the Code· would not be taxed as income. The Court denied the taxpayer the benefits of Section 736 treatment since the final result of that transaction was that the taxpayer received $200,000 in cash and the remaining partners controlled the former partner's interest in the partnership. We cannot agree with the Commissioner that these cases, either separately or taken together, should control the result of the case before us. Neither *General Geophysical* nor *Crenshaw* concerns a gift of property or a redemption of donated stock.

█ The law which does control the result in this case is clear beyond peradventure. As was said in a case involving the redemption of corporate promis-

sory notes which had been donated only a few days earlier by the corporation's *sole* shareholder:

The law with respect to gifts of appreciated property is well established. A gift of appreciated property does not result in income to the donor so long as he gives the property away absolutely and parts with title thereto before the property gives rise to income by way of sale.

*Humacid Co., supra,* 42 T.C. at 913 *See also,* Stuart A. Rogers, *supra;* Campbell v. Prothro, *supra;* Sheppard v. United States, *supra;* Mamie F. Farrier, *supra.* The reasoning of these cases is that the transfer of income producing property (not of income) is not an event in which an appreciation of value is realized. As is well established, " * * * Congress has not seen fit to tax unrealized appreciation in property value." Tatum v. Commissioner, 400 F. 2d 242, 247 (5th Cir. 1968) (footnote omitted); Lyon & Eustice, Assignment of Income: Fruit and Tree as Irrigated by the P.G. Lake Case, 17 Tax L.Rev. 295, 380–82 (1962).

█ From the cases we have examined we believe that the central inquiry in a case such as this one, which concerns donated property [10] and which the Commissioner has attacked through the "step transaction" doctrine, is: Did the donor part with all dominion and control over the donated property? [11] Thus we must determine whether Carrington retained any control over his gift of fifty-one shares of Cardinal stock to St. Matthew's Church. If he did not retain any vestige of control, the gift was com-

10. The question of whether an item is property or income has been often litigated. Helvering v. Horst, 311 U.S. 112, 118, 61 S.Ct. 144, 85 L.Ed. 75 (1940) contains the Supreme Court's statement of the law in this area. Contests between the Commissioner and taxpayers in this area are common. *See, e. g.,* Tatum v. Commissioner, 400 F.2d 242, 247 (5th Cir. 1968). That question does not concern us here, for the Commissioner has not suggested that the stock was not property, but only that the redemption of stock by the

Church was, in reality, a dividend to Carrington.

11. See the portions of the following opinions quoted *supra.* Stuart A. Rogers, 38 T.C. 785, 789 (1962); United States v. General Geophysical Co., *supra,* 296 F.2d at 89; Humacid Co., 42 T.C. 894, 913 (1964). *See also,* Winton v. Kelm, 122 F.Supp. 649, 653 (D.Minn.1954); Behrend v. United States, 73–1 U.S.T.C. ¶ 9123.

plete, and this case must follow the many analogous cases already discussed. From the stipulated facts we learn that Carrington transferred and "delivered fifty-one (51) of his one hundred (100) shares of stock in Cardinal Construction Company to St. Matthews Episcopal Church, a charitable organization, and he retained ownership of the remaining forty-nine (49) shares." (Par. 8, Appendix at 24). This alone should suffice to establish that by retaining "ownership" of only forty-nine shares Carrington had completely divested himself of the fifty-one donated shares. Consideration of the facts of the transaction compels a similar conclusion. A gift of stock between competent parties requires donative intent, actual delivery, and relinquishment of dominion and control by the donor. Ellsworth v. Ellsworth, 151 S.W.2d 628, 632 (Tex.Civ. App.1941); Apt v. Birmingham, 89 F. Supp. 361, 370 (N.D.Iowa 1950); 38 C.J.S. Gifts § 46 (1943). Here Carrington, with full intention to do so, gave absolute title to and actually delivered fifty-one shares of Cardinal stock to St. Matthew's Church. Not only was the title to the donated stock free and clear, but the Church's shares represented a controlling interest in Cardinal. There is, therefore, no doubt that the Church had full title to the shares and full dominion and control over them. There is neither evidence of, nor suggestion that, there was a prior *obligation* on the part of the Church to redeem this stock so that Carrington would regain control of Cardinal. We thus conclude that the gift to St. Matthews was complete and effective. Since this was a completed gift, we believe that the Commissioner's characterization of the transactions involved in this case must be rejected.

The Tax Court noted that the Commissioner had suggested no reason why recasting the distribution of the residence as a dividend to Carrington would reflect the substance of the transaction any more accurately than would giving effect to the form adopted; that Carrington had parted with ownership of

his stock; that no gain on a redemption had been realized by him at that point; and that the Church had acquired the rectory directly from Cardinal. Upon the facts and the law we agree with the Tax Court that Carrington realized neither an actual nor a constructive dividend upon the redemption of the Cardinal stock.

The decision of the Tax Court is affirmed.