James R. **HALEY** and Doris L. Haley, Plaintiffs,

v.

**UNITED STATES** of America, Defendant.

Civ. A. No. 1088.

United States District Court, M. D. Georgia, Albany Division.

May 29, 1975.

James E. Reynolds, Jr., Perry, Walters, Lippett & Custer, Albany, Ga., for plaintiffs.

Scott P. Crampton, Asst. Atty. Gen., Gregory R. Schwandt, Dept. of Justice, Washington, D. C., for defendant.

BOOTLE, District Judge:

This is a tax refund suit brought under 28 U.S.C. § 1346(a)(1) in which the plaintiffs seek to recover income taxes paid pursuant to a deficiency assessment for the calendar year 1963. Mr. James R. Haley is the interested taxpayer and for purposes of this opinion will be referred to as the taxpayer; Mrs. Doris Haley, his wife, is a party to this action only because she and her husband filed a joint return for the year in question. The case has been submitted to the court for decision upon a stipulation of facts. The question presented is whether the gain from the sale of shares in certain closely held corporations is recognizable by the taxpayer or by his children.

After consideration of the exhibits, stipulation, and briefs of the parties, we find the facts as stipulated and enter the following decision, which shall constitute findings of fact and conclusions of law as required by Rule 52, Federal Rules of Civil Procedure.

In the early 1900's two brothers, W. B. Haley, Sr. and J. T. Haley, Sr., moved to Georgia and over the years formed several family corporations in which they were the dominant stockholders. W. B. Haley, Sr. died in 1950; J. T. Haley, Sr. died in 1956.

The heirs of the two brothers succeeded to their interests in the various family-owned corporations by inheritance and by gifts, except that the First State Bank and Trust Co. held certain shares as administrator of the estate of J. T. Haley, Sr. The interest of the heirs of W. B. Haley, Sr. was managed primarily by his oldest son, Herbert P. Haley; the interest of the heirs of J. T. Haley, Sr. was managed primarily by his son-in-law Spencer C. Walden.

In an effort to represent properly their respective family interests in the operation of the businesses, Herbert Haley and Spencer Walden were deeply involved in the affairs of each of the family corporations. It was their desire in 1962 to reduce their involvement in so many corporations (there were eleven) and to reduce the involvement of their respective families. To bring about the separation of interests the family members entered into discussions to arrive at possible transfers of stock which would shift control of some corporations to the J. T. Haley, Sr. family and of other corporations to the W. B. Haley, Sr. family. The purpose of the discussions was not necessarily to place 100% ownership of any particular corporation in one family or the other but rather to vest control of the various

corporations in one family or the other so that there would no longer be joint control of each corporation, and each family would gain control of particular corporations.

Various arrangements were considered. An accounting firm valued the stock of the different corporations and prepared a spread sheet showing the inter-family ownership and appraised values. The firm also prepared sheets showing cash flow consequences between the families if the particular arrangement being considered was fully carried out in accordance with the recognized objective. These worksheets provided a type of written "roadmap" of the proposed transactions and the results if the transactions were consummated.

No written buy and sell agreement was entered into by members of the two family groups. Although each family member (except one) had expressed a willingness to effect the shift of control, the individual family members did not consider themselves legally bound to carry out any particular purchase or sale.

Shortly after it was determined which family would obtain control of which corporation and what prices would be paid for the shares transferred but prior to any sale by the taxpayer, he transferred to his wife, as custodian for his six children, 132 shares of Albany Savings Bank, 96 shares of Albany Suburban Investments, Inc., and 3 shares of Cuthbert Coca Cola Bottling Company.

Each certificate representing these shares was endorsed by the taxpayer to the custodian on May 28, 1963. The shares were transferred on the books of the respective corporations, and new certificates in the name of the custodian were issued within a few days.

Although the taxpayer expected that his wife would sell the shares she held as custodian to the J. T. Haley, Sr. family, Mrs. Haley made no written or oral agreement to transfer the certificates in any manner. She was under no legal obligation to sell the stock, and the taxpayer retained no rights or powers to direct the future transfer of the stock. There was an effective and completed gift of stock from the taxpayer to his children, and gift tax returns were timely filed by the taxpayer.

The custodian sold the shares to various members of the J. T. Haley, Sr. family. The Albany Savings Bank stock was sold on August 7, 1963; the Albany Suburban Investments, Inc. stock and the Cuthbert Coca Cola Bottling Company stock were sold on May 31, 1963. The custodian used the proceeds to buy stock for the children in four of the family corporations in furtherance of the objective to shift control of the corporations.

The children timely filed an income tax return which reflected their gain from the sale of the stock, and the taxes due thereon were paid. The taxpayer and his wife filed a joint tax return for the calendar year 1963. On August 23, 1968, the Internal Revenue Service assessed additional taxes of $11,403.82 for 1963. This amount, plus $2,933.08 in interest, was paid on August 27. The assessment was based on attributing the gain from the sale of the stock to the taxpayer rather than to his children.

The taxpayer timely filed a claim for refund on May 31, 1970, which was disallowed in September 1970. This suit was then brought under 28 U.S.C. § 1346(a)(1) (1970).

The taxpayer contends that the transfer of stock to the custodian was a completed, unconditional gift, and consequently the gain resulting from the subsequent sale of the stock is properly attributable to the donee children. The government argues that the truth and substance of a transaction must prevail over its technical form and appearance especially when the transactions are routed through an interim transferee in an effort to gain a tax benefit.

As was said in *Blueberry Land Co. v. Commissioner*, 361 F.2d 93, 101 (5th Cir. 1966):

> We must take guard against over-simplification, for a glib generalization that substance rather than form is determinative of tax consequences not only would be of little assistance in deciding troublesome tax cases, but also would be incorrect. The fact —at least the tax world fact—is that in numerous situations the form by which a transaction is effected does influence and may indeed decisively control the tax consequences.

A taxpayer may arrange his business affairs in a way to minimize his taxes; and if such arrangements are not shams, the courts should be hesitant to disregard form and to exhalt substance.

In *Carrington v. Commissioner*, 476 F.2d 704, 708 (5th Cir. 1973), the court observed that "the central inquiry in a case . . . which concerns donated property and which the Commissioner has attacked through the 'step transaction' doctrine is: Did the donor part with all dominion and control over the donated property?" In *Carrington* the taxpayer was a member of the governing body of St. Matthews Episcopal Church and a member of a committee created for the purpose of acquiring a new rectory; he was also the sole stockholder in two corporations (Cardinal Construction Co. and Day Realty Co.) which as a partnership owned a suitable residence. On December 19, 1966, the taxpayer conveyed fifty-one of one hundred outstanding shares of Cardinal stock to the church. On December 23, the partnership conveyed the residence to Cardinal. Four days later Cardinal redeemed the church's stock and as consideration conveyed the residence to the church. Cardinal was liquidated six months later. The court rejected the government's contention that the gift should be disregarded because it was merely an intermediate step in the taxpayer's overall plan to transfer the residence without the imposition of a dividend tax on the distribution.[1] The court noted that the taxpayer had completely divested himself of ownership of the fifty-one shares of stock. The court concluded: "There is neither evidence of, nor suggestion that, there was a prior *obligation* on the part of the Church to redeem this stock . . . ."

Just as the taxpayer in *Carrington* expected the church to redeem the stock in exchange for the residence, so did the taxpayer in the instant case expect the custodian to sell the stock. There was no agreement which would obligate the custodian to sell the stock after the shares were transferred to her. Of key importance in each case is the fact that neither the church nor the custodian was under any obligation to carry out the expectations of the taxpayers.

The situation now before the court is analogous to those cases wherein a stockholder transferred his stock in a company just prior to the corporation's being liquidated and having its assets distributed. In *Simmons v. United States*, 341 F.Supp. 947 (M.D.Ga.1972), the taxpayer transferred some of her Hanna Co. stock to an irrevocable trust after the board of directors of the Hanna Co. had recommended that the corporation be liquidated and after' the plan of liquidation had been adopted but before the dissolution was effective. The court held that the taxpayer had not retained any incident of ownership in the income-producing asset (*i. e.*, the stock); the dividends upon liquidation were thus properly recognizable by the trust and not by the taxpayer. *See also Jacobs v. United States*, 280 F.Supp. 437 (S.D. Ohio 1966), *aff'd*, 390 F.2d 877 (6th

---

1. The parties had stipulated (476 F.2d at 705):

The purpose of the various integrated transactions involving the real property described in paragraph 9, above, was to place the property in the hands of St. Matthews Episcopal Church at the maximum tax benefit to petitioners, Walter R. Carrington and Ada Raye Carrington.

Cir. 1968); *Granite Trust Co. v. United States*, 238 F.2d 670 (1st Cir. 1956). *Kinsey v. Commissioner*, 477 F.2d 1058 (2d Cir. 1973) is distinguishable because the court there held that the liquidation was effective prior to the transfer of the stock and since the liquidation was final the transfer was an anticipatory assignment of the liquidation proceeds.

The Haley situation is different from that in *Hindes v. United States*, 326 F.2d 150 (5th Cir. 1964). In *Hindes* the taxpayer found a buyer for his farm. The buyer wanted to pay the entire purchase price at once; the taxpayer wanted installment payments. A corporation was formed which bought the farm from the taxpayer and sold it to the buyer. The buyer was thus able to pay a lump sum for the farm, and the seller got installment payments. The court held that the corporation was a sham, for it served no purpose other than as a conduit. However, in the case before the court, Haley did not acquire anything from the sale of the stock, for he had made an irrevocable gift to his children. The custodian was thus not a conduit through which the taxpayer would realize gain from the stock sale.

*Commissioner v. Court Holding Co.*, 324 U.S. 331, 65 S.Ct. 707, 89 L.Ed. 981 (1945) is likewise distinguishable. There an apartment house, which was the sole asset of the corporation, was transferred to the corporation's two shareholders as a liquidating dividend. They then conveyed the apartment house to a purchaser who had originally negotiated the sale with the corporation. The intermediate transfer was an obvious sham, for the shareholders who controlled the corporation had already entered into an oral agreement on behalf of the corporation with the purchaser for the sale of the apartment house. The Court found the liquidation and the intermediate transfer to be "mere formalisms" designed to disguise what was in actuality a sale from the corporation to the purchaser. In the instant case, however, the taxpayer transferred the stock to a completely different entity (his wife, as custodian), and the taxpayer did not receive the proceeds from the sale of the stock either directly or indirectly.

The taxpayer did not attempt to make what he did look like anything except the gift that it was. The case is thus not like those wherein the taxpayer seeks to have equity look like debt, an exchange like a sale, or prepayment of rent like a loan. *See Berkowitz v. United States*, 411 F.2d 818 (5th Cir. 1969); *Redwing Carriers, Inc. v. Tomlinson*, 399 F.2d 652 (5th Cir. 1968); *United States v. Williams*, 395 F.2d 508 (5th Cir. 1968).

This is not an assignment of income case which *Lucas v. Earl*, 281 U.S. 111, 50 S.Ct. 541, 74 L.Ed. 731 (1930) and *Helvering v. Horst*, 311 U.S. 112, 61 S.Ct. 144, 85 L.Ed. 75 (1940) would control. Haley did not transfer simply the right to receive the proceeds from the stock; he transferred the stock itself. He retained no incidents of ownership of the income-producing property.

█ This court reaches the same conclusion as did the court in *Granite Trust Co. v. United States*, 238 F.2d 670, 678 (1st Cir. 1958): "In short, though the facts in this case show a tax avoidance, they also show legal transactions not fictitious or so lacking in substance as to be anything different from what they purported to be . . .." Haley is entitled to a refund of the tax and interest paid under the erroneous assessment.

Let counsel for the plaintiffs prepare and submit an appropriate judgment after affording counsel for the defendant an opportunity for suggestions as to form.