T.C. Memo. 2020-128

UNITED STATES TAX COURT

JON DICKINSON AND HELEN DICKINSON, Petitioners <u>v.</u>
COMMISSIONER OF INTERNAL REVENUE, Respondent

Docket No. 9526-19.                    Filed September 3, 2020.

<u>Mitchell I. Horowitz</u> and <u>Qian Wang</u>, for petitioners.

<u>Christopher D. Bradley</u> and <u>John T. Arthur</u>, for respondent.

MEMORANDUM OPINION

GREAVES, <u>Judge</u>:  This case is before the Court on petitioners' motion for

summary judgment and respondent's cross-motion for partial summary judgment

under Rule 121 (motions).[1]  In a timely issued notice of deficiency, respondent

_____

[1]Unless otherwise noted, all Rule references are to the Tax Court Rules of

(continued...)

[*2] recharacterized petitioners' stock donations as taxable redemptions, followed by donations of the cash proceeds. Petitioners contend that the form of the transaction should be respected. We agree with petitioners, and we will grant petitioners' motion and deny respondent's motion.

Background

The following undisputed facts are drawn from the parties' motion papers and the attached exhibits, as well as other documents the parties filed in the instant case. Petitioners filed joint Federal income tax returns for 2013-2015, the years at issue, and resided in Florida when they filed the petition.

Petitioner husband was the chief financial officer and a shareholder of Geosyntec Consultants, Inc. (GCI), a privately held company, during the years at issue. The GCI board of directors (Board) authorized shareholders to donate GCI shares to Fidelity Investments Charitable Gift Fund (Fidelity), an organization tax exempt under section 501(c)(3), through written consent actions in 2013 and 2014. In both consent actions the Board stated that Fidelity "has a donor advised fund program which incorporates procedures requiring * * * [Fidelity] to immediately liquidate the donated stock" and "seeks an imminent exit strategy and, therefore,

[1](...continued)
Practice and Procedure, and all section references are to the Internal Revenue Code of 1986, as amended.

[*3] promptly tenders the donated stock to the issuer for cash". The Board approved a third round of donations at a Board meeting by unanimous vote in 2015; the Board members signed the written minutes of the meeting. After each Board authorization, petitioner husband donated appreciated GCI shares to Fidelity. Petitioner husband remained a full-time GCI employee following each donation.

GCI confirmed in letters to Fidelity that its books and records reflected Fidelity as the new owner of the shares. For each stock donation, petitioner husband signed a letter of understanding (LOU) to Fidelity, indicating that the transferred stock was "exclusively owned and controlled by Fidelity", and that Fidelity "maintains full discretion over all conditions of any subsequent sale" of the stock and "is not and will not be under any obligation to redeem, sell, or otherwise transfer" the stock. Petitioners received confirmation letters from Fidelity, which explained that Fidelity had "exclusive legal control over the contributed asset". Shortly after each donation, Fidelity redeemed the GCI shares for cash.

Petitioners claimed a charitable contribution deduction on Form 1040, U.S. Individual Income Tax Return, for each year petitioner husband donated shares to Fidelity. Respondent issued a notice of deficiency to petitioners on March 21,

**[\*4]** 2019, wherein he determined that petitioners were liable for tax on the redemption of the donated GCI shares. Respondent determined a corresponding penalty under section 6662(a) for each year at issue. Petitioners timely petitioned this Court for redetermination of the deficiencies and penalties. Thereafter, the parties filed the motions presently before the Court.

## Discussion

### I. Summary Judgment Standard

The purpose of summary judgment is to expedite litigation and avoid costly, unnecessary, and time-consuming trials. See FPL Grp., Inc. & Subs. v. Commissioner, 116 T.C. 73, 74 (2001). We may grant a motion for summary judgment, or partial summary judgment regarding an issue, when there is no genuine dispute of material fact and a decision may be rendered as a matter of law. Rule 121(b); Elec. Arts, Inc. & Subs. v. Commissioner, 118 T.C. 226, 238 (2002). Furthermore, we construe the facts and draw all inferences in the light most favorable to the nonmoving party to decide whether summary judgment is appropriate. Sundstrand Corp. v. Commissioner, 98 T.C. 518, 520 (1992), aff'd, 17 F.3d 965 (7th Cir. 1994). However, the nonmoving party may not rest upon the mere allegations or denials in his pleadings but instead must set forth specific facts

[*5] showing that there is a genuine dispute for trial.  Rule 121(d); see also

Sundstrand Corp. v. Commissioner, 98 T.C. at 520.

II.    Analysis

A taxpayer may deduct the fair market value of appreciated property

donated to a qualified charitable organization.  See sec. 170; sec. 1.170A-1(c)(1),

Income Tax Regs.  Donating appreciated property to a charity allows the taxpayer

to avoid paying tax that would arise if the taxpayer instead sold the property and

donated the cash proceeds.  See sec. 61(a)(3); Boris I. Bittker & Lawrence

Lokken, Federal Taxation of Income, Estates & Gifts, para. 35.2, at *1 (Westlaw

2020) ("[T]he shrewd strategy with appreciated assets is to contribute the property

in kind, allowing the charity to sell if it prefers cash.").  Petitioners sought the tax

advantages of donating appreciated property rather than cash proceeds.

In the notice of deficiency, respondent determined that each donation of the

GCI shares, followed by Fidelity's exchange of the shares for cash, should be

treated in substance as a redemption of the shares for cash by petitioner husband,

followed by petitioners' donation of the cash redemption proceeds to Fidelity.  Per

Humacid Co. v. Commissioner, 42 T.C. 894, 913 (1964), we respect the form of

this kind of transaction if the donor (1) gives the property away absolutely and

parts with title thereto (2) before the property gives rise to income by way of a

[*6] sale.  See also Grove v. Commissioner, 490 F.2d 241, 246 (2d Cir. 1973), aff'g T.C. Memo. 1972-98; Carrington v. Commissioner, 476 F.2d 704, 708 (5th Cir. 1973), aff'g T.C. Memo. 1971-222; Behrend v. United States, 31 A.F.T.R.2d (RIA) 73-406, 1972 WL 2627, at *3 (4th Cir. 1972); Rauenhorst v. Commissioner, 119 T.C. 157, 162-163 (2002).

The first Humacid prong requires us to determine whether the donor transferred all his rights in the donated property.  See, e.g., Grove v. Commissioner, 490 F.2d at 246; Carrington v. Commissioner, 476 F.2d at 708; Behrend, 1972 WL 2627, at *3.  To defeat petitioners' motion on this point, respondent must set forth specific facts showing that there is a genuine dispute for trial as to whether petitioner husband made an absolutely perfected gift of the GCI stock before the redemption.  See Rule 121(d); Sundstrand Corp. v. Commissioner, 98 T.C. at 520.

GCI's letters to Fidelity confirming ownership transfer, Fidelity's letters to petitioners explaining that Fidelity had "exclusive legal control" over the donated stock, and the LOUs to the same effect all support petitioners' claim that petitioner husband transferred all his rights in the shares.  Respondent makes much of the fact that Fidelity regularly redeemed the GCI shares shortly after each donation, according to what the Board understood to be Fidelity's internal procedures.

[*7] Respondent argues that these facts suggest petitioner husband, GCI, and Fidelity could have arranged the redemptions in advance of the gifts, but a preexisting understanding among the parties that the donee would redeem donated stock does not convert a postdonation redemption into a predonation redemption. See Behrend, 1972 WL 2627, at *3. Furthermore, neither a pattern of stock donations followed by donee redemptions, a stock donation closely followed by a donee redemption, nor selection of a donee on the basis of the donee's internal policy of redeeming donated stock suggests that the donor failed to transfer all his rights in the donated stock. See, e.g., Grove v. Commissioner, 490 F.2d at 242-245 (respecting form of transaction where donee needed to fundraise to support its operations, and over a decade consistently redeemed annual donations of stock for which donor remained entitled to dividends); Carrington v. Commissioner, 476 F.2d at 705-706 (respecting form of transaction where donee redeemed stock eight days after it was donated); Palmer v. Commissioner, 62 T.C. 684, 692-693 (1974), (respecting form of transaction where, pursuant to a single plan, the taxpayer donated stock to a foundation and then caused the corporation to redeem the stock from the foundation the day after the donation), aff'd, 523 F.2d 1308 (8th Cir. 1975). Petitioners' contemporaneous documentary evidence of an absolute gift, and respondent's failure to assert facts indicating any genuine controversy on this

**[\*8]** point, lead us to conclude that petitioner husband's donations satisfy the first Humacid requirement.

The second Humacid requirement, that the taxpayer make the donation before the stock gives rise to income by way of sale, implements the assignment of income doctrine: A taxpayer who has earned income cannot escape taxation by assigning his right to receive payment. See Helvering v. Horst, 311 U.S. 112, 116 (1940). Humacid prong two ensures that if stock is about to be acquired by the issuing corporation via redemption, the shareholder cannot avoid tax on the transaction by donating the stock before he receives the proceeds.

Where a donee redeems shares shortly after a donation, the assignment of income doctrine applies only if the redemption was practically certain to occur at the time of the gift, and would have occurred whether the shareholder made the gift or not. See Palmer v. Commissioner, 62 T.C. at 694-695; see also Ferguson v. Commissioner, 174 F.3d 997, 1003-1004 (9th Cir. 1999) (finding that the shareholder recognizes income from a stock sale where acquisition is "practically certain to occur", rather than the subject of "a mere anticipation or expectation", before the shareholder donates stock), aff'g 108 T.C. 244 (1997). In Hudspeth v. United States, 471 F.2d 275, 276 (8th Cir. 1972), for example, the court recast a stock donation as a taxable stock sale and donation of the sale proceeds where the

[*9] taxpayer donated stock after the issuing corporation's directors and shareholders had adopted a plan of complete liquidation.  See also Jones v. United States, 531 F.2d 1343, 1343-1344 (6th Cir. 1976); Allen v. Commissioner, 66 T.C. 340, 347 (1976).[2]  By contrast, there was no assignment of income in Palmer v. Commissioner, 62 T.C. at 687-688, 695, even though all parties were related and anticipated the redemption before the donation, because "no vote for the redemption had yet been taken" when the shareholder donated the stock.  As in Palmer, the redemption in this case was not a fait accompli at the time of the gift. As noted above, respondent argues that the parties may have prearranged for Fidelity to redeem the stock.  Even if that was the case, it would not affect the analysis under the second Humacid requirement.  Rather, we respect the form of the transaction because petitioner husband did not avoid receipt of redemption proceeds by donating the GCI shares.

The parties point us to Rev. Rul. 78-197, 1978-1 C.B. 83, a "bright-line" rule the IRS applies in cases like Palmer, which focuses on the donee's control

---

[2]The Court of Appeals for the Ninth Circuit has gone a step further, asserting in dicta that stock sale proceeds are taxable to a shareholder who donates stock absent a binding obligation to sell if the facts and circumstances indicate that a tender offer and merger are "practically certain to proceed" in the immediate future.  See Ferguson v. Commissioner, 174 F.3d 997, 1004 (9th Cir. 1999), aff'g 108 T.C. 244 (1997).

**[\*10]** over the disposition of the appreciated property.  See Rauenhorst v.

Commissioner, 119 T.C. at 165.[3]  This Court has not adopted Rev. Rul. 78-197,

supra, as the test for resolving anticipatory assignment of income issues, see

Rauenhorst v. Commissioner, 119 T.C. at 166, and does not do so today.  The

ultimate question, as noted in Palmer, is whether the redemption and the

shareholder's corresponding right to income had already crystallized at the time of

the gift.  See Palmer v. Commissioner, 62 T.C. at 694-695.  Regardless of whether

the donee's obligation to redeem the stock may suggest the donor had a fixed right

to redemption income at the time of the donation, see Rauenhorst v.

Commissioner, 119 T.C. at 166-167, respondent does not allege that petitioner

husband had any such right in this case.  Accordingly, respondent's resort to Rev.

Rul. 78-197, supra, is unavailing.

## Conclusion

As required by Humacid and its progeny, petitioner husband made an

absolute gift of the GCI shares in each taxable year before the stock gave rise to

---

[3]Rev. Rul. 78-197, 1978-1 C.B. 83, 83, announces that the IRS "will treat the proceeds as income to the donor under facts similar to those in the Palmer decision only if the donee is legally bound, or can be compelled by the [issuing] corporation, to surrender the shares for redemption."

**[*11]** income by way of a sale.  We will therefore grant petitioners' motion for summary judgment, and deny respondent's motion for partial summary judgment.

To reflect the foregoing,

<u>An appropriate order and decision</u>

<u>will be entered</u>.